## UNITED STATES v. MASTERS.

(District Court, M. D. Pennsylvania. October Term, 1920.)

1. **Intoxicating liquors** ⊂⇒224—**Storing liquor in hotel raises presumption of violation of law.**

Where intoxicating liquor was stored in the basement of a hotel though the hotel keeper disclaimed ownership, and it was claimed by one having a permit to use it for certain stated purposes, the location and character of the place raised the presumption that the liquor was kept in violation of National Prohibition Act, § 25.

2. **Intoxicating liquors** ⊂⇒101—**Permits for specific purpose held not to authorize storage in hotel.**

Permits giving authority to sell intoxicating liquors for other than beverage purpose, and to use it in the manufacture of certain preparations stated, do not give authority to store the liquor in the basement of a hotel, while the holder of the permits claimed to be altering his paint shop to carry on the stated business.

3. **Intoxicating liquors** ⊂⇒78(1)—**Permits must comply with statutory requirements.**

Though National Prohibition Act, § 6, authorizes the commissioner to prescribe the form of permits for possession and sale of intoxicating liquor he cannot evade the plain provision of the act, so that permits which do not comply with the statutory requirements that they state the acts that are permitted and specify the quantity and kind of liquor to be purchased are not a protection to the possessor of liquor.

Petition for Return of Whisky Seized under the National Prohibition Act.

Petition by Henry B. Masters against the United States for the return of 15 barrels of rye whisky, in the possession of the Federal Prohibition Agent. Petition refused.

J. E. Sickler, Asst. U. S. Atty., of Scranton, Pa.
O'Brien & Kelly, of Scranton, Pa., for defendant.

WITMER, District Judge. The petitioner represents himself as owner of 15 barrels of rye whisky, now in the possession of Federal Prohibition Agent A. E. Rudisill, and on representation that it was unlawfully seized asks the court to make an order directing its redelivery to him.

[1] The liquor was found in the basement or cellar vault of the Updegraff Hotel, at Williamsport, and was seized by the internal revenue agents by authority of a search warrant, regularly issued under section 25 of the National Prohibition Act (41 Stat. 315). Whether the liquor found its way to the place it was seized, and was there kept in compliance with the provisions of this act, is the question to be decided. The proprietor and occupant of the hotel disclaims title to it. He and the claimant insist that it was there temporarily stored under a lease for a rental consideration. Whatever the facts may be, the location, and the attending circumstances and character of the place, raise the presumption that the liquor was kept there in violation of the provisions of the recited act. The claimant has attempted to disprove

this presumption, by claiming authority to store under certain permits, offered by him in evidence, issued by the Commissioner of Internal Revenue.

[2] One of these permits confers authority to—

"sell intoxicating liquors for other than beverage purpose, to wit, to others' holding permits which confer authority to purchase and use intoxicating liquors for nonbeverage purposes."

The other gives permission to use intoxicating liquor for other than beverage purposes, to wit:

"In the manufacture of the preparations listed on application dated April 13, 1920, and marked approved by this office, viz.:

|  |  | For Whom Manufactured. | Per Cent. of Alcohol. |
|---|---|---|---|
| Masters' | Dandelion Tonic | Self | 18½ % |
| " | Bitter Tonic | " | 18½ % |
| " | Laxative Cough Syrup | " | 19% |
| " | Mustard Liniment | " | 60% |
| " | Horko Vino | " | 18½ %" |

Mr. Masters was well provided with permits to carry on his business, which he proposed carrying on at Mill and Carter streets, when his building should be completed and made suitable to accommodate the shipment of whisky stored in the basement of the Hotel Updegraff. He had the liquor to manufacture, but the building in which this important business was staged was as yet no more than it had been for years, merely a paint shop, in which he plied his art as a painter. These permits, such as they are, have been very carelessly drawn, as will be seen by reference to the Act which authorizes them. Section 6, speaking of permits generally, concludes that—

"Every permit shall be in writing, dated when issued, and signed by the commissioner or his authorized agent. It shall give the name and address of the person to whom it is issued, and shall designate and limit the acts that are permitted and the time when and the place where such acts may be performed."

However, whether the permits with which Mr. Masters had himself supplied should be regarded as sufficient for the purposes indicated, they did not authorize him to transport and store his liquor where the same was discovered by the revenue agents.

[3] Section 6, to which reference has already been made, provides that "no one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the commissioner so to do," except when prescribed by a physician, or when used in the treatment of patients at a sanatorium to cure persons suffering with alcoholism, as may be allowed by the commissioner. It further provides that permits to purchase liquor for any purpose shall specify the quantity and kind to be purchased, and the purpose for which it is used. While the commissioner is given authority later on in this section to prescribe the form of permits and applications for the same, he can not evade the plain provisions of the act.

The general act is intended to prevent the sale and bartering in intoxicating beverages of every kind, with certain exceptions noted, and no one is permitted to possess such, unless he brings himself and his

business within these exceptions. And when he does so the commissioner shall give him a permit in writing, which shall set forth fully and in detail what he may do, and when and where such may be performed, in order that the government and its agents may at all times be informed of his doings, and, if desirable, to supervise and inspect his conduct, so as to ascertain whether the law is being respected. In other words, whatever is done shall be done openly and with knowledge.

The law provides that the government shall control and regulate the flow of liquor, whenever and wherever the same is in the restricted sense permitted, and to this end it is required that the whereabouts of liquor and the sale thereof must be with knowledge to the authorities at Washington charged with the enforcement of the law.

The prayer of the petition is refused.