## STATE v. LAFAYETTE McALLISTER.

(Filed 12 March, 1924.)

**1. Intoxicating Liquor—Spirituous Liquor—Statutes—Possession—Instructions.**

> Chapter 1, section 2, Laws 1923, known as the Turlington Act, was expressly to be liberally construed to prevent intoxication, and makes it unlawful for one to possess intoxicating liquor, with restricted qualifications; and a conviction will be sustained under a verdict of guilty upon evidence tending to show that the defendant received a bottle of intoxicating liquor from another, took a drink therefrom, and handed the bottle back to the one from whom he had received it, neither of them being upon his own premises; and an instruction to find the defendant guilty under these circumstances, if proved beyond a reasonable doubt, is not erroneous.

**2. Same—Verdicts.**

> A general verdict of guilty, under evidence tending to show that the defendant unlawfully had in his possession, when not in his private dwelling, intoxicating liquor, under an indictment therefor, as well as for the unlawful receiving and transportation, is sufficient to sustain a conviction upon the count of possession prohibited under the provisions of the Turlington Act, ch. 1, secs. 2 and 10, Laws 1923.

**3. Same—Appeal and Error—Instructions—Harmless Error.**

> Where a general verdict of guilty has been rendered against the defendant, upon competent evidence, tending to show that he unlawfully had spirituous liquor in his possession, contrary to the provisions of the Turlington Act, an erroneous charge as to receiving and transporting it, is harmless error.

APPEAL by defendant from *Bond, J.,* and a jury, at January Term, 1924, of WASHINGTON.

Criminal action. The defendant was arrested on 21 November, 1923, under warrant charging that he unlawfully and wilfully did have in his possession and did receive, transport spirituous liquor, contrary to the statutes, etc. The defendant was tried in the Recorder's Court of Washington County, and from the verdict of "guilty," and judgment thereon, the defendant appealed to the Superior Court.

The defendant was tried in the Superior Court of Washington County, January Term, 1924, upon the original warrant. The State introduced P. W. Brown as a witness, who testified that on a certain occasion, since the "Turlington Act" has been in force and effect, he saw some colored men, the defendant being one of them, on the river shore in the town of Plymouth, not on the premises of either of them, and in watching them he saw one of the other men pass a bottle of liquor to the defendant, who

took a drink out of the bottle and handed the bottle back to the man who had passed it to him. There was other evidence offered. The State rested its case.

The defendant introduced no evidence, but made a motion, at the close of the State's evidence, to nonsuit, which was refused, and defendant excepted.

The court charged the jury that, if they believed the evidence and found the facts to be as it tended to prove, and beyond a reasonable doubt therefrom, that the prisoner took the bottle and passed the bottle back to the owner, it would be their duty to return a verdict of "guilty of unlawfully receiving whiskey."

The defendant excepted to the charge. There was a verdict of guilty, and a defendant was sentenced by the court to pay a fine of $5 and costs of action.

The defendant assigned as error the refusal of the court below to nonsuit, the charge given, and the judgment rendered, and appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*P. H. Bell for defendant.*

CLARKSON, J. . Chapter 1, section 2, Laws 1923 (known as the "Turlington Act"), is as follows: "No person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor, except as authorized in this act; and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented. Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, and possessed, but only as provided by Title II of 'The Volstead Act,' act of Congress enacted 28 October, 1919, an act supplemental to the National Prohibition Act, 'H. R. 7294,' an act of Congress, approved 23 November, 1921."

The provision of the above act is taken from act of Congress (U. S. Compiled Statutes, 1923, 10138½aa), which is as follows: "No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor, except as authorized in this act, and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented. Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, and pos-

sessed, but only as herein provided, and the commissioner may, upon application, issue permits therefor: *Provided,* that nothing in this act shall prohibit the purchase and sale of warehouse receipts covering distilled spirits on deposit in government bonded warehouses, and no special-tax liability shall attach to the business of purchasing and selling such warehouse receipts. (28 October, 1919, ch. 85, Title II, sec. 3, 41 Stat., 308.)" It will be noted that the word "purchase" was added to section 2 of the Turlington Act, *supra.* 10138½ C., *supra,* makes it unlawful, under the Volstead Act, under certain circumstances, to "purchase" intoxicating liquors for beverage purposes.

Fed. Stat. Anno., 1921 (2 ed.), Supp., p. 540, is as follows: "Purpose as preventing use of liquors for beverage purposes.—The chief purpose of the framers of the Volstead Act was to reduce and as far as possible to prevent the use of intoxicating liquors as a beverage. *U. S. v. Turner* (W. D. Va., 1920), 266 Fed., 248; *U. S. v. Masters* (M. D. Pa., 1920), 267 Fed., 581; *Street v. Lincoln Safe Deposit Co.* (S. D. N. Y., 1920), 267 Fed., 706; *Ledbetter v. Bailey* (W. D. N. C., 1921), 274 Fed., 375; *Kelly v. Lewellyn* (W. D. Pa., 1921), 274 Fed., 108.

" 'If anything is well settled and determined, it is that the Volstead Law, enacted pursuant to, and in consequence of, the adoption of the Eighteenth Amendment to the Federal Constitution, was intended and calculated by Congress and by those interested in its passage, to prohibit the manufacture, sale, and transportation, for beverage purposes, of any and every kind of intoxicating liquor within the United States; and Congress expressly defined such "intoxicating liquor" to be any spirituous, vinous, malt, or fermented liquor or liquid "fit for use for beverage purposes" containing alcohol to the extent of "one-half of one per cent, or more," by volume. Volstead Law, Tit. II, sec. 1. So that, by this law, which was enacted after much consideration of the circumstances and of the obvious intent and purpose of the people of the United States, as reflected by their ratification of the amendment, it was definitely and positively determined that any liquor or liquid, fit for use as a beverage and possessing alcohol in excess of the maximum mentioned, might not be manufactured, sold, or transported in the United States. Even its mere possession was similarly prohibited, save under exceptional, severely necessary, and obviously harmless circumstances.'

" 'This conclusion results not only from the reading of the act in its entirety, looking at the big purpose in view, and the means to be employed to gain the end sought, but also from the language of section 3 of Title II, the controlling section of the act, which is to the effect that:

" 'No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufac-

ture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor, except as authorized in this act, and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented.'

" 'Here, in unequivocal language, we have a declaration on the part of Congress that, however this act may be viewed, and tested by every means known to those whose duty and function it is to construe statutes, in every instance the statute "shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented." Nothing can be plainer than that, and it seems to me that Congress, there, as it might properly do, has said that the courts shall not seek to construe the statute so as to permit the use of intoxicating liquors as a beverage, but that they shall use all reasonable means to construe it so as to prevent such use.' *U. S. v. Dodson* (S. D. Cal., 1920), 268 Fed., 297.

"The primary object of the Prohibition Act is the prevention of the use of intoxicating liquors as a beverage, although it retains features of a revenue law. To effectuate that purpose, the statute requires that all of the provisions shall be liberally construed. *U. S. v. Sacein Rouhana Farhat* (S. D. Ohio, 1920), 269 Fed., 33.

" 'It is apparent from the provisions of this act that intoxicating liquor may be imported for nonbeverage purposes. It is likewise manifest that the provisions of this act shall not in any way interfere with the operation of existing law, except where it is inconsistent, and the act expressly provides that persons shall not be relieved from any taxes or other charges imposed upon the traffic in such liquor.' *The Goodhope* (W. D. Wash., 1920), 268 Fed., 694.' "

The charge on which defendant was tried "did have in his possession and did receive, transport spirituous liquor contrary to the statutes" (1) possess, (2) receive, (3) transport.

There was a general verdict of guilty. The statute clearly does not allow one to transport or possess intoxicating liquor.

Section 2 of the Turlington Act (chapter 1, Public Laws 1923, *supra*) makes the possession of any quantity of intoxicating liquor for beverage purposes unlawful, unless, of course, the possession of the liquor is in one's private dwelling, under section 10. It is true that there is nothing in the act which makes the actual receipt of intoxicating liquors, independent of the fact that one cannot possess liquor without having received it at some time, a criminal offense. Here, however, the warrant charges unlawful possession, the unlawful receipt, and the unlawful transportation of liquor. The verdict of the jury was general upon this warrant. It can then be sustained upon the charge of unlawful possession. The fact that the judge's charge may have been erroneous in the

particular in which he told the jury if they believed the evidence beyond a reasonable doubt, to return a verdict of guilty of unlawfully receiving liquor, would render it harmless error, in the face of the fact that there was a proper charge on the warrant and a proper verdict upon proper evidence.

In *State v. Switzer, ante,* 96, it was said: "There was a general verdict of guilty, which, in law, was a verdict of guilty on each and every count. The general verdict of guilty upon two counts will be sustained if the evidence justifies either. *S. v. Toole,* 106 N. C., 736; *S. v. Strange,* 183 N. C., 775." *S. v. Coleman,* 178 N. C., 760.

In the case of *S. v. Jackson,* 13 N. C., 563 (decided nearly one hundred years ago), *Judge Ruffin* said: "In ordinary cases the consequence would be a new trial. But in the present the statute is spread out in the case, and it is thus made to appear to us that the jury have precisely adopted that interpretation, which the court ought to have given by way of instruction. The course of the judge gave the prisoner the benefit of the chance of a mistake of the jury. He cannot complain that they made no mistake. As, therefore, it is manifest that the jury have administered the law correctly, there is no ground for a new trial."

In *Cunard S. S. Co. v. Mellon,* 262 U. S., 100; 43 Sup. Ct. Repr., 506, *Mr. Justice Van Devanter* says: "Some of the contentions ascribe a technical meaning to the words 'transportation' and 'importation.' We think they are to be taken in their ordinary sense, for it better comports with the object to be attained. In that sense transportation comprehends any real carrying about or from one place to another. It is not essential that the carrying be for hire, or by one for another, nor that it be incidental to a transfer of the possession or title. If one carries in his own conveyance, for his own purposes, it is transportation, no less than when a public carrier, at the instance of a consignor, carries and delivers to a consignee for a stipulated charge. See *United States v. Simpson,* 252 U. S., 465; 40 Sup. Ct., 364; 64 L. Ed., 665; 10 A. L. R., 510. Importation, in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in, it is importation, regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act."

It is well said by *Clark, C. J.,* in the concurring opinion in *S. v. Coleman,* 178 N. C., 762: "The intention of the act may be tersely expressed in the phrase, 'Taste not, touch not, handle not' the forbidden article (for beverage purposes). It is outlawed by the statute, just as dynamite or any poisonous drug, and for the same reason that the popular will has deemed this necessary for the public welfare, and made the violation of that will a crime."

From a careful examination of the authorities we can find

No error.