## STATE v. LOY SIGMON.

(Filed 16 December, 1925.)

**1. Evidence—Statutes—Nonsuit—Motions.**

Under the provisions of C. S., 4643, the defendant in a criminal action may have the case dismissed upon the insufficiency of the evidence, as in a civil action, C. S., 567, upon motion at the close of the State's evidence, or upon the whole evidence.

**2. Same—Criminal Law—Burden of Proof.**

A motion to dismiss or as of nonsuit upon the evidence in a criminal case, will be denied if sufficient, considered in the light most favorable to the State, to prove guilt of the defendant beyond a reasonable doubt.

**3. Same—Reasonable Doubt.**

The requirement that the evidence must be sufficient to convict beyond a reasonable doubt in criminal actions, is for the benefit of the defendant; and it requires the State to satisfy a jury to a moral certainty of the truth of the charge.

**4. Appeal and Error — Criminal Law — Instructions — Presumptions—Record—Reasonable Doubt.**

Where the defendant has excepted to the trial in a criminal action upon the evidence tending to show his guilt beyond a reasonable doubt, and the evidence thereon is sufficient, it will be presumed on appeal to the Supreme Court that the trial judge fully instructed the jury as to what constituted reasonable doubt as a matter of law, when the charge is not set out in the record.

**5. Intoxicating Liquor — Spirituous Liquor — Statutes — Transporting—Possession.**

Upon the trial for transporting intoxicating liquors in violation of our statute, the purpose of the possession of the intoxicants, or that they were for the purpose of profit, are immaterial, and the fact that the person accused is carrying them from one place to another is sufficient.

**6. Intoxicating Liquor—Spirituous Liquor — Statutes—Transportation—Evidence—Questions for Jury.**

Evidence tending to show that the defendant endeavored to conceal his car along a county highway at night, concealed himself from the officers of the law to whom he soon surrendered, when they were yet at the place; that his car contained no intoxicants, but when the back of the car was opened it smelt of whiskey; that several large bottles with a funnel that smelt of whiskey were found at the place; that another car passed down the road and stopped, and that while the officers were taking the defendant to jail the bottles and funnel had been taken away, is sufficient for conviction of unlawful transportation of spirituous liquor under the provisions of our statute. A load had been transported and the car was stopped with the implements ready to be reloaded.

**7. Same—Possession.**

Where the evidence is sufficient to convict the defendant of transporting whiskey under our statute, C. S., vol. III, 3411 (a) and (b), the transportation of spirituous liquor includes the possession.

**8. Same—Issues—Consistent Verdict.**

Where an indictment for violating our prohibition law contains a count as to the unlawful possession and also unlawfully transporting spirituous liquor, an acquittal upon the first is not inconsistent with a conviction on the second issue. They are two distinct offenses under the statute.

**9. Evidence—Intoxicating Liquor—Spirituous Liquor—Smell.**

Evidence by the smell in the rear of the car with other circumstances that an automobile had contained whiskey, having jugs, funnel, etc., as in this case: *Held*, sufficient to sustain a verdict of unlawfully transporting intoxicating liquor.

**10. Same—Statutes—Per Cent of Alcohol.**

Where the evidence is sufficient to convict the defendant of unlawfully transporting whiskey, it is presumed that when whiskey is spoken of that it contained more alcohol than one half of one per centum, prohibited by the statute.

APPEAL from *Shaw, J.,* and a jury, July Term, 1925, CATAWBA Superior Court. No error.

The defendant was tried on "a true bill" found by the grand jury, which was sent them by the solicitor of the district, Hon. R. L. Huffman, containing 8 counts. The only count that need be considered is the 4th, as follows: "The jurors of the State, upon their oath, do present, that Loy Sigmon, late of the county aforesaid, on the 12th day of June, 1925, with force and arms, at, and in the county aforesaid, unlawfully and wilfully did transport intoxicating liquors, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The State offered the following evidence:

Tom Gabriel, testified: "I am chief of the police of the town of Newton; on Friday night, 12 June, in company with Mr. Curlee,

STATE v. SIGMON.

jailer, we went over in the west edge of town, near Albert Little's place on the sand-clay road leading into Newton from Saint Paul's Church, and just off the sand-clay road on a road that leads into Little's house, we found the car belonging to this defendant; I know him, his name is Loy Sigmon; his car was just off the main sand-clay road; by the side of car were three jugs, gallon jugs, all empty and with no odor about them at all; near the jugs was a funnel that smelled like it had had whiskey run through it; the cap of the defendant was hanging on the tail light of car; defendant was not there. Lights were on car; the rear of car had nothing in it; it was a Ford roadster, though there was a smell like whiskey in the rear of car; there was nothing else in car; after we had been there for few moments, defendant called to us to turn on lights and he would come out; this we did, and he came to car; we arrested him and took him to town; he gave bond and in a few minutes we went back to place and searched for whiskey; we found none; shortly after we got there, car passed and stopped up the road toward the church, and then car went on. There was no actual whiskey found in car, nor was there any, just the odors that I have told you about. Car that stopped up the road turned up there somewhere and then went toward Newton. It was not Sigmon's car that went up the road."

W. C. Curlee, testified: "I am jailer for Catawba County, live in Newton; on the night Mr. Gabriel testified about, he and I went out from Newton on the Saint Paul road and just off the road on road leading into home of Albert Little, a negro, we saw Ford roadster parked, with lights burning, it was about 9 o'clock in the nighttime; there was a cap hanging over the rear light on bracket that light is fastened to, front lights shining up the road toward Little's house; there was three empty jugs sitting in the road off from the car; there was nothing in the jugs and nothing had been in them so far as any smell was concerned, no liquor; there was a funnel lying near the jugs that smelled like it had had whiskey run through it; we searched the car, but there was nothing in it at all; we raised the cooter shell or back of the Ford, and it smelled like whiskey had been in there, that is, there was an odor like whiskey, but there was no whiskey in it at all; this cooter shell is in back of car and over the exhaust of motor and drive shaft. It was a wooden floor with open joints that you can see through; we found no whiskey; in few moments the defendant, I know him, his name is Loy Sigmon, called to us to turn on our lights so that he could get out, and we did and he came up to where we were; we arrested him and brought him to town. Just as we went up and while there I heard someone run down through the field; after we brought Sigmon to town and he gave bond we went back to search for whiskey, but we

found nothing, no cans or anything. While there, we heard car go up sand-clay road towards the church; stop and turn around and go back to town. That is all I know. It was not the Sigmon car, no, sir."

The defendant introduced no evidence, and, at the close of the State's evidence, moved for judgment as of nonsuit.

The jury rendered a verdict of "guilty of transporting intoxicating liquors." Judgment was rendered, exceptions and assignments of error were duly made by defendant, and appeal taken to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Wilson Warlick for defendant.*

CLARKSON, J. C. S., 4643, in part, is as follows: "When on the trial of any criminal action in the Superior Court, or in any criminal court, the State has produced its evidence and rested its case, the defendant may move to dismiss the action or for judgment of nonsuit. If the motion is allowed, judgment shall be entered accordingly; and such judgment shall have the force and effect of a verdict of 'not guilty' as to such defendant. If the motion is refused, the defendant may except; and if the defendant introduces no evidence, the case shall be submitted to the jury as in other cases, and the defendant shall have the benefit of his exception on appeal to the Supreme Court." Mason Act.

Defendant introduced no evidence. "The motion we are now considering was made under C. S., 4643, a statute which serves, and was intended to serve, the same purpose in criminal prosecutions as is accomplished by C. S., 567, in civil actions." *S. v. Fulcher,* 184 N. C., p. 665. In *S. v. Rountree,* 181 N. C., p. 537, it was said: "Considering the testimony in its most favorable light to the State, the accepted position on a motion of this kind, we think his Honor properly submitted the case to the jury. *S. v. Oakley,* 176 N. C., 755; *S. v. Carlson,* 171 N. C., 818. The court's inquiry upon such a motion is directed to the sufficiency of the evidence to support or warrant a verdict. (*S. v. Hart,* 116 N. C., 976), and not to its weight or to the credibility of the witnesses. *S. v. Utley,* 126 N. C., 997."

In *S. v. Palmore,* 189 N. C., p. 541, it is held: "In *S. v. Starling,* 51 N. C., 367, *Pearson, C. J.,* approves the charge of *Shepherd, J.,* in the court below: 'Reasonable doubt, in the humanity of our law, is exercised for a prisoner's sake, that he may be acquitted if his case will allow it. It is never applied for his condemnation.' *Speas v. Bank,* 188 N. C., 528. In the interest of humanity, except in certain cases changed by statute, the accused is entitled to an instruction that the prosecution must prove the charge against him beyond a reasonable

doubt. In material or civil matters, ordinarily the rule is different—by preponderance or greater weight of the evidence."

In *S. v. Schoolfield,* 184 N. C., p. 723, reasonable doubt is defined: "A reasonable doubt is not a vain, imaginary, or fanciful doubt, but it is a sane, rational doubt. When it is said that the jury must be satisfied of the defendant's guilt beyond a 'reasonable doubt,' it is meant that they must be 'fully satisfied' (*S. v. Sears,* 61 N. C., 146), or 'entirely convinced' (*S. v. Parker,* 61 N. C., 473), or 'satisfied to a moral certainty' (*S. v. Wilcox,* 132 N. C., 1137), of the truth of the charge. *S. v. Charles,* 161 N. C., 287. If after considering, comparing, and weighing all the evidence the minds of the jurors are left in such condition that they cannot say they have an abiding faith, to a moral certainty, in the defendant's guilt, then they have a reasonable doubt; otherwise not. *Commonwealth v. Webster,* 5 Cushing (Mass.), 295; 52 Am. Dec., p. 730; 12 Cyc., 625; 16 C. J., 988; 4 Words and Phrases, 155."

In *S. v. Steele, ante,* 506, it is said: "We suggest, in addition to the definitions heretofore approved, for its practical terms, the following: 'A reasonable doubt, as that term is employed in the administration of criminal law, is an honest, substantial misgiving, generated by the insufficiency of the proof; an insufficiency which fails to convince your judgment and conscience, and satisfy your reason as to the guilt of the accused.' It is not 'a doubt suggested by the ingenuity of counsel, or by your own ingenuity, not legitimately warranted by the testimony, or one born of a merciful inclination or disposition to permit the defendant to escape the penalty of the law, or one prompted by sympathy for him or those connected with him.' *Jackson, J.,* in *U. S. v. Harper,* 33 Fed., 471."

The charge of the court below is not in the record. "In *Indemnity Co. v. Tanning Co.,* 187 N. C., p. 196, it was said: 'The presumption of law from the record is that the court below charged the law correctly bearing on the evidence as testified to by the witness at the trial.'" *In re Westfeldt,* 188 N. C., 705.

From the record it is presumed that the court below charged fully as to reasonable doubt, and gave defendant the full benefit of the definition as to what was the law in regard to reasonable doubt.

In *S. v. McAllister,* 187 N. C., p. 404, we quoted from *Cunard S. S. Co. v. Mellon,* 262 U. S., 100, opinion by *Mr. Justice Van Devanter,* who said: "Some of the contentions ascribe a technical meaning to the words 'transportation' and 'importation.' We think they are to be taken in their ordinary sense, for it better comports with the object to be attained. In that sense transportation comprehends any real carrying about or from one place to another. It is not essential that the carrying be for hire, or by one for another, nor that it be incidental to a transfer

of the possession or title. If one carries in his own conveyance, for his own purposes, it is transportation, no less than when a public carrier, at the instance of a consignor, carries and delivers to a consignee for a stipulated charge. See *U. S. v. Simpson,* 252 U. S., 465; 40 Sup. Ct., 364; 64 L. Ed., 665; 10 A. L. R., 510. 'Importation, in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in, it is importation, regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act.'" McFadden on Prohibition (1925) sec. 282; Blackmore on Prohibition (1923), sec. 9. Possession may be actual or constructive. See *S. v. Myers, ante,* 239.

It is presumed that the court below charged fully as to what constituted "transporting intoxicating liquors."

In the present case the evidence of transportation was circumstantial.

*Mr. Justice H. G. Connor,* in a carefully written opinion in *S. v. Wilcox,* 132 N. C., 1137, approved the charge of Hon. W. B. Councill, judge presiding, as follows: "'Circumstantial evidence is a recognized instrumentality of the law in the ascertainment of truth, and, when properly understood and applied, highly satisfactory in matters of gravest moment. Where such evidence is relied upon to convict it should be clear, convincing and conclusive in its connections and combinations, excluding all rational doubt as to the prisoner's guilt. . . . When such evidence is relied on for conviction every material and necessary circumstance must be established beyond a reasonable doubt, and the entire circumstances so established must be so strong as to exclude every reasonable supposition but that of guilt.'" *S. v. West,* 152 N. C., p. 832.

The charge in *S. v. Wilcox, supra,* was approved in *S. v. Stewart,* 189 N. C., 348.

From the record, it is presumed that the court below charged fully as to circumstantial evidence and gave defendant full benefit of the definition as to what was the law in regard to circumstantial evidence.

On the motion of defendant to nonsuit, the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. *S. v. Sinodis,* 189 N. C., 567.

Counsel for defendant, in his able argument and brief, quotes from *S. v. Vinson,* 63 N. C., p. 338, and like cases: "We may say with certainty, that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury." *Brown v. Kinsey,* 81 N. C., 245; *Byrd v. Express Co.,* 139 N. C., 273; *S. v. Prince,* 182 N. C., 788. We think this is the correct law of this jurisdiction.

44—190

Defendant further says: "It is respectfully contended that there was no testimony submitted by the State on which any reasonable idea may be founded that this odor, if coming from any whiskey or other substance above enumerated, or that any substance theretofore, contained as much as one-half of one per centum by volume, and it will be noted that there was no effort on the part of the State to prove that fact."

The witness Curlee, testified: "We raised the cooter shell or back of the Ford, and it smelled like whiskey had been in there, that is there was an odor like whiskey, but there was no whiskey in it at all."

"Knowledge for search without a warrant may arise from the sense of smell. *U. S. v. Borkowski,* 268 Fed., 408; *McBride v. U. S., 284* Fed., 416; *U. S. v. Kaplan,* 286 Fed., 963. . . . Sight is but one of the senses and an officer may be so trained that the sense of smell is as unerring as the sense of sight. *U. S. v. Borkowski, supra."*

"This absolute personal knowledge can be acquired through the sense of seeing, hearing, *smelling,* tasting or touching." *S. v. Godette,* 188 N. C., p. 503.

*Albert v. U. S.* (C. C. A., 6th Cir., 1922), 281 Fed., 511, says, in part: "Whiskey is a well-known, distilled, spirituous, and intoxicating liquor. It is matter of common knowledge, of which we may properly take judicial cognizance, that whiskey, properly so-called, contains many times one-half of 1 per cent of alcohol. Recognition that distilled spirits are always intoxicating is found in *U. S. v. Standard Brewery,* 251 U. S., 210, 219, 40 Sup. Ct., 139, 64 L. Ed., 229; and, see *Ruppert v. Caffey,* 251 U. S., at page 298, 40 Sup. Ct., 141, 64 L. Ed., 260. It was clearly competent for witnesses familiar with liquor to testify, from the appearance, its smell, its taste, and its effect, that it was whiskey, and the fact that it was bought and sold, as such is evidence in the same direction."

C. S., vol. III, 3411 (a) and (b), (Public Laws 1923, chap. 1, known as the Turlington or Conformity Act) is, in many respects, the same as "The Volstead Act," although more stringent. Both acts make it unlawful to "transport" or "possess" liquor. The act defines "The word 'liquor' or the phrase 'intoxicating liquors' shall be construed to include 'alcohol, brandy, whiskey, rum, gin, beer, ale, porter and wine, and in addition thereto any spirituous, vinous, malt or fermented liquors, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume, which are fit for use for beverage purposes," etc.

Defendant contends that as he was only found guilty of "transporting liquors," on the fourth count, the third count was for "possession," and the findings of guilty of transporting automatically rendered a verdict of not guilty on the other counts in the bill and the one for

"possession." This is true. The defendant further contends, as we construe it, that a party could not be guilty of transporting unless likewise guilty of possession. The offenses are designated in the statute separately, and while the jury would have been fully justified in finding the defendant guilty on both counts, under the evidence in this case, their failure to do so, does not, as a matter of law, vitiate the verdict on the count for transporting. It goes without saying that the jury would have to find, from the circumstantial evidence, that defendant had in his possession liquors that he was transporting before they could convict him.

We think the facts were more than a scintilla and sufficient to be submitted to the jury; the probative force was for them. The facts succinctly: The chief of police of Newton with the jailer went to the west edge of Newton, on a sand-clay road leading into Newton from St. Paul's Church, and left this road and took a road that leads to Albert Little's place—about 9 o'clock at night. Just off the sand-clay road that leads to Little's place, they found defendant's car, a Ford roadster, parked in the road. The back of the car was towards the sand-clay road. Defendant was not there, but his cap was hanging on the tail or rear light of the car. The lights were on, the front lights shining up the road towards Little's house. By the side of the car were three one-gallon jugs, empty, no odor about them. Near the jugs was a funnel that smelled like it had had whiskey run through it. The car was searched and there was nothing in it. "We raised the cooter shell or back of the Ford, and it smelled like whiskey had been in there, that is there was an odor like whiskey, but there was no whiskey in it at all." In a few minutes defendant called to us to turn on our lights so he could get out. He came up and was arrested. Just as the officers went up they heard some one run down through the field. The officers brought defendant to town. He gave bond and they, in a short while, went back, to search for whiskey, they found no cans or anything. While there they heard a car that was not defendant's go up the sand-clay road towards the church, stop, turn around and go back towards Newton.

The evidence clearly indicates and sufficient for the jury to believe beyond a reasonable doubt, that defendant had been transporting liquors in the back of the Ford roadster. While the officers opened it up "it smelled like whiskey had been in there." Near the car were 3 empty one-gallon jugs to be filled up, nothing had been in them. The funnel near the jugs smelled like it had had whiskey run through it. No doubt it had been used before and was ready to be used to fill the jugs. Defendant had parked his machine, he left it so no one would easily see him from the sand-clay road. The rear was to the sand-clay road and his cap concealed the rear light. His front lights shone up the road

towards Little's house, so he could see where to go. He had evidently left the car to go after another supply. Some one ran through the field as the officers went to where the car was parked—no doubt his confederates. The officers arrested defendant and brought him to Newton and went back, found no cans or anything. While there a car other than defendant's went up the sand-clay road towards the church, stopped, turned around and went back towards Newton. From the facts and circumstances, there was sufficient evidence for the jury to find beyond a reasonable doubt that not only defendant was "transporting liquors," but he had confederates and had been getting the liquor and had sold out and gone back to them to get another load. He had all the implements of a blind-tiger transporting liquor. The officers caught him before he had gotten his new supply. A grand jury of at least twelve men found a true bill against him on the evidence—a petty jury of 12 found him guilty beyond a reasonable doubt. The judge before whom he was tried thought there was sufficient evidence to go to the jury. At least 24 jurors—"such persons as have paid all the taxes assessed against them for the preceding year and are of good moral character and of sufficient intelligence"—and a judge have carefully considered the evidence. We think the facts sufficient to have been submitted to the jury—the probative force was for them.

The Legislature of North Carolina, part C. S. (vol. III), 3411 (b), has said: "And all the provisions of this article shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." This provision is the wisdom of ages. Solomon, the wisest man (Prov., chap. 23, v. 29, 32) said: "Who hath woe? who hath sorrow? who hath contentions? who hath babbling? who hath wounds without cause? who hath redness of eyes? They that tarry long at the wine; . . . At the last it biteth like a serpent, and stingeth like an adder."

Shakespeare, has said: "Oh God, that men should put an enemy in their mouths to steal away their brains." We find

No error.