STATE v. TOM R. PIERCE.

(Filed 31 December, 1926.)

1. **Intoxicating Liquor—Spirituous Liquor—Evidence—Nonsuit—Motions.**

   Evidence in this case tending to show that the defendant lived in a part of his filling station used as a residence, where was found a quantity of empty bottles smelling of whiskey, and that in the vicinity was a used roadway leading to several places where cartons with bottles of whiskey were concealed, etc.: *Held,* sufficient to deny defendant's motion as of nonsuit. 3 C. S., 3411(b), (j).

STATE v. PIERCE.

2. Evidence—Nonsuit—Criminal Law.

Upon a motion as of nonsuit upon the evidence in a criminal case, the evidence is to be taken in the light most favorable to the State, with all reasonable inferences therefrom resolved in its favor.

3. Intoxicating Liquor—Spirituous Liquor—Prima Facie Case—Evidence —Constructive Possession.

A prima facie case of the unlawful sale of intoxicating liquors may be established by circumstances sufficient to show that the defendant had in his constructive possession large quantities of whiskey not on his premises, in the possession of others who held it for him.

4. Instructions—Criminal Law—Burden of Proof—Charge Construed as a Whole.

An instruction in a 'criminal case will not be held for prejudicial or reversible error for failing in one part of the charge to place the burden of proof on the State to show guilt beyond a reasonable doubt, when in the same connection, and by another portion of the charge, this requirement is clearly given.

5. Instructions—Words and Phrases.

The use of the words "proven by the testimony" for the words "warranted by the testimony," is not subject to just criticism by the defendant in a criminal case, when used in the charge by the judge to the jury in relation to the degree of proof required of the State to convict.

APPEAL from *Cranmer, J.,* and a jury, at August Term, 1926, of WAYNE. No error.

The defendant was indicted for having in his possession, on or about 19 June, 1926, about sixty pints of whiskey for the purpose of sale. The defendant operated a filling station on the Raleigh hard-surfaced highway, No. 10, about a mile from the city limits of Goldsboro. From information received, L. O. Rhodes, deputy sheriff of Wayne County, obtained under the law a search warrant. He, with the sheriff's son, went to Pierce's premises to search, and informed him of the warrant. The search was made. (1) Rhodes found in the store a pint bottle with half teaspoon of liquor in it; (2) under the store, where defendant kept his car, he found a box containing fifteen or twenty empty pint bottles sitting on the running board of defendant's car, similar to the one found in the store; (3) he saw tracks leading from the filling station, which he followed to a ditch, and there found a Big Boy carton with cells in it that hold the bottles apart. "One had a tiny bit of liquor, a pint bottle just like the other one I found." That was seventy (66) feet from the corner post of the filling station. He followed the ditch on down directly back of the store and (a) found another paste-board carton in a sack with no bottles in it, but three jug stoppers in it. Same kind of carton found at the other place. Robuck

(W. P. Grant), who was with him, called "Come over here; here it is," and he found (b) two cases, one full and a part of a case, same as other pasteboard carton with letters on the side of it. One full case of whiskey, twenty-four pints, and the other six or seven pints had been taken out; (c) another case in a sack, same kind. (d) Then another carton practically full of whiskey, a hole torn in the top, same kind of bottles. He kept going a little further until six cartons on that side, and he had two, making eight—in all sixty-five pints. Defendant was with him during the search.

Rhodes testified further: "When I started to the first place where I found the carton, I said, 'All these bottles look bad,' and he (defendant) said, 'I can't help that, people come here and drink whiskey and throw the bottles over the fence, and I can't help it.' They were scattered between the filling station and the ditch; emptied and thrown out there. I don't know how many we found scattered; I reckon some ten or twelve were out there." The search was made about 4 o'clock Saturday evening.

W. P. Grant, a deputy sheriff, testified in part: "I went under the store. I first lifted up a bundle of broom straw and found a case of empty bottles. I set them on the running board of Tom Pierce's car. These bottles had the odor of whiskey in them. The bottles were all pint bottles, twenty-four to the case." He corroborated Rhodes in other particulars.

The distance from the store to the place Rhodes found the carton was twenty-two yards and about fifty-one yards to where the first case of other liquor was found. A path leading to each place and the whiskey was under some briars at ends of the paths. The liquor found was across the road from the filling station. Defendant used the back of the store or filling station as a residence.

H. L. Bizzell testified in part: The last part of May, about 7 or 8 o'clock in the morning, before the search in June, "I was coming from towards Kenly into the highway No. 10, and in just about a hundred or a hundred and fifty yards of his place I saw a man handing Pierce jugs, and he was putting them in sacks, and I thought to myself it never would do to run right up on them, and I blew my horn good and loud, and they done just like a worm in hot ashes; they just went all down over it. . . . He went over the sack and down to the ground, both men did, and I was going on No. 10, and a car was coming, and I couldn't look to see what they did, but that was what happened. I did not recognize the other man, but Pierce was standing in front taking the jug and putting it into the tow-bag. There was only one man handing those jugs to Tom Pierce. I saw him hand Pierce the third jug. That

man was driving a Ford automobile; it looked like he got the jug from the back of the car. This car came up to the filling station from the same way I did, and was very near the door—about six or eight feet from the door."

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. Faison Thomson, Outlaw & Dortch and Murray Allen for defendant.*

CLARKSON, J. The defendant introduced no evidence, but at the close of the State's evidence moved for judgment of nonsuit. C. S., 4643. The court below overruled the motion. In this we think there was no error. On a motion to nonsuit, the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. We think there was more than a scintilla of evidence, and the evidence, both direct and circumstantial, amply sufficient to be submitted to the jury. *S. v. Sigmon.* 190 N. C., p. 684.

In *S. v. Meyers,* 190 N. C., p. 239, *Varser, J.,* writing for the Court, citing many authorities, says: "Possession usually implies detention or control, or the right thereto. The possession may be in one person for another, or in one for several, or in several for another, or for themselves, and others not actually present, or however distant from the whiskey itself. Possession is the retention or enjoyment of a thing which a man holds or exercises by himself or by another who keeps or exercises it in his name. . . . The possession may, within this statute, be either actual, or constructive. . . . If a man procures another to obtain liquor for him and put it in a given place, and the other performs this agreement and places the liquor, then the possession is complete. A person may be in the possession of the article which he has not at the moment about his person. The Turlington Act 'shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.' There the constructive possession, as well as the actual possession, is in the contemplation of the statute."

Public Laws 1923, chapter 1, known as the Conformity or Turlington Act, sec. 2, 3 C. S., 3411(b), says: "No person shall manufacture sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this act; and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented," etc. Section 10, 3 C. S., 3411(j), is as follows: "The possession of liquor

by any person not legally permitted under this act to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this act. But it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof, and his family residing in such dwelling, and for his bona fide guests when entertained by him therein."

The defendant occupied and used the rear of the filling station as his private dwelling. The court below, on this aspect, charged the jury as follows: "Prima facie evidence means that evidence which is received and accepted and continued until the contrary is shown, and you gentlemen of the jury will remember the evidence, giving the State of North Carolina a fair and an impartial trial, and giving the defendant at bar a fair and an impartial trial." This instruction, standing alone, may be subject to some criticism (S. v. Wilkerson, 164 N. C., p. 431), but in this immediate connection the judge charged the jury as follows: "Now the State has the duty of satisfying you beyond a reasonable doubt of the guilt of the defendant. A reasonable doubt is an honest, substantial misgiving generated by insufficient proof, insufficiency which fails to satisfy your reason of the guilt of the accused. A reasonable doubt is not a doubt suggested by ingenuity of counsel or by your own ingenuity not legitimately proven by the testimony. It is not a doubt to permit the defendant to escape the penalty of the law. It is not a possible doubt, an imaginary doubt or a captious doubt, but it is a fair doubt, based upon reason and common sense and growing out of the evidence in the case." Taking the instruction in its entirety, we think it should be upheld. McDaniel v. R. R., 190 N. C., at p. 475.

If he had possession of liquor as disclosed by this record it was prima facie evidence that he had it for sale. If not in his private dwelling, if he had actual constructive possession, whether for sale or not, it is a violation of law. 3 C. S., 3411(b) (j); S. v. McAllister, 187 N. C., 400; S. v. Knight, 188 N. C., 630.

It will be noted that section 10 has reference to the liquor "in one's private dwelling while the same is occupied and used by him as his dwelling only." Defendant cannot complain of the charge. There was sufficient direct and circumstantial evidence to be submitted to the jury, taking into consideration the testimony of Bizzell, that defendant had possession of liquor—not in his private dwelling. S. v. Bradsher, 188 N. C., 447; S. v. Sigmon, supra.

The charge of reasonable doubt is substantially that approved in S. v. Steele, 190 N. C., at p. 512. See S. v. Sigmon, supra. The use of

"proven by the testimony" for the words "warranted by the testimony," is a distinction without a difference, to warrant the testimony there must be proof. Leaving out the words "born of a merciful inclination or disposition" seems to be more favorable to the defendant. It emphasizes that when warranted by proof merciful inclination or disposition should not supplant law.

On the entire record we can find no prejudicial or reversible error.

No error.