STATE v. W. H. HICKEY.

(Filed 4 December, 1929.)

1. **Constitutional Law J a—Federal provisions as to searches and seizures are not restrictive on states.**

    The provisions of the Federal Constitutional Amendment, Art. IV, securing to the people the right of safety and protection of their persons and property against unreasonable searches and seizures, and providing that no warrant should be issued except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized, are not restrictive of the powers of the State, and apply solely to the Federal Government.

STATE v. HICKEY.

2. **Intoxicating Liquor A d—Arrest and search of person reasonably suspected of carrying intoxicants is lawful.**

Where an officer sees a person leave his automobile with his appearance indicating that he had something concealed on his person and reasonably giving the impression that the person was carrying intoxicating liquor, the officer may immediately arrest and search such person, and where a half-gallon of liquor is found on the person of the defendant the action of the officer does not violate the provisions of Article I, section 11, of the State Constitution.

3. **Constitutional Law F a—Provision that defendant may not be compelled to give evidence against self does not apply to physical facts.**

Upon the trial of the defendant for violating the prohibition law the introduction in evidence of testimony of the officer making the arrest that he found a half-gallon jar of liquor on the person of the defendant is competent, and is not in violation of the constitutional provision that a defendant may not be compelled to give evidence against himself, the provision not applying to physical facts or conditions.

4. **Intoxicating Liquor A b—Turlington Act will be liberally construed.**

Our prohibition act was passed in pursuance of Article I, section 2, of the State Constitution providing that all political power is vested in and derived from the people, and the approval of the people of this statute as expressed in the elections requires a liberal construction of the statute to carry out its intention as gathered from its related parts and clearly expressed.

5. **Intoxicating Liquor A a—Turlington Act is valid.**

An act by our Legislature to make the State law conform to the "Volstead Act" passed by Congress, is valid, and in some respects more stringent than the Congressional act.

6. **Intoxicating Liquor A c—"Liquor" will be deemed "intoxicating liquor" in the absence of proof to the contrary.**

Where a defendant is indicted for violating our State prohibition law, evidence that he had in his possession one-half gallon of "liquor" is interpreted as being an intoxicating beverage having the prohibited quantity of intoxicant, or containing more than one-half of one per centum of alcohol by volume, when there is no evidence to the contrary.

7. **Intoxicating Liquor B a—Evidence of possession of intoxicating liquor is sufficient for directed verdict for possession and transportation.**

Where upon the trial of the defendant for the violation of the Conformity Act there is testimony of an officer that he took from defendant, after he left his automobile and was entering a building, a half-gallon jar of liquor, the defendant introducing no evidence: *Held*, the evidence was sufficient to support a charge that if the evidence satisfied the jury beyond a reasonable doubt of the defendant's guilt of possession and transporting, the jury should answer those issues in the affirmative.

APPEAL from *Harwood, J.,* and a jury, at April Term, 1929, of MITCHELL. No error.

A. S. Burleson, an officer, testified to the effect that "I saw him (defendant) get out of the car. He had on a light sweater, and I saw a bulk

STATE *v.* HICKEY.

of something under his arm, and started to go in the door in the Glenn Building in Spruce Pine, and I ran in before he could get into the door and caught him and took one-half gallon of liquor from under his sweater."

The court below charged the jury: "If this evidence satisfies you beyond a reasonable doubt that the defendant had in his possession liquor, then you would return a verdict of guilty against him for the possession of intoxicating liquor. If this evidence satisfies you beyond a reasonable doubt that the defendant transported liquor—that is, carried it from one place to another and had it in his custody and control, and moved it from one place to another, you would return a verdict of guilty of transporting. The defendant did not introduce evidence in this case. That is not to be considered by you to his prejudice. The burden is on the State to satisfy you beyond a reasonable doubt of his guilt. You may retire and make up your verdict."

There was a verdict of guilty. The court below fined the defendant $100 and costs. The defendant excepted and assigned as error the admission of the testimony of the officer, A. S. Burleson. At the close of the State's evidence, defendant made a motion to dismiss the action or for judgment of nonsuit. C. S., 4643.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Charles Hutchins for defendant.*

CLARKSON, J. The defendant cited the following amendments to the Constitution of the United States, claiming that he is protected under them:

Art. IV. "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

Art. V. "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the malitia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

We cannot so hold.

In *S. v. Godette,* 188 N. C., at p. 502, speaking to the subject, it is said: "The United States Court, in *Brown v. New Jersey,* 175 U. S., 175, citing numerous authorities, says: 'The first ten amendments to the Federal Constitution contain no restrictions on the powers of the State, but were intended to operate solely on the Federal Government.' *Ensign v. Pennsylvania,* 227 U. S., p. 592; *S. v. Campbell,* 182 N. C., p. 911. This case was taken to the Supreme Court of the United States on writ of error and affirmed. 262 U. S., p. 728; *S. v. Simmons,* 183 N. C., p. 684."

The defendant contends: "The illegal search and seizure of the defendant and the result thereof, the conviction of the defendant, violates said Fifth Amendment to the Constitution of the United States, as well as Article I, section 11 of the Constitution of North Carolina, both of which provide in effect that a defendant shall not be required to give evidence against himself. If the State had been required to proceed against the defendant with such legal evidence as it had, no conviction could have been had. The State did not proceed to convict the defendant by any such evidence, but proceeded to convict him by evidence obtained by the seizure of the person, and a search of his person without a process, and without evidence. The defendant was in effect placed on the stand, examined, and such examination used against him to convict him. The defendant insists that the upholding of these provisions of Federal Constitution and the State Constitution are of far greater importance to the dignity of the law than the conviction of a defendant for a mere misdemeanor."

Article I, sec. 11, of the Constitution of North Carolina, invoked, is as follows: "In all criminal prosecutions every man has the right to be informed of the accusation against him and to confront the accusers and witnesses with other testimony, and to have counsel for his defense, and not be compelled to give evidence against himself or to pay costs, jail fees, or necessary witness fees of the defense, unless found guilty."

"In North Carolina it has long been the law that a physical fact or condition which was brought out by the illegal action of an officer may be given in evidence against the defendant. *S. v. Graham,* 74 N. C., 646 (prisoner compelled by officer to put shoe in track). This case has been approved in many decisions since, including *S. v. Mallette,* 125 N. C., 725, which case was affirmed in the United States Supreme Court on writ of error in *Mallett v. N. C.,* 181 U. S., 589; *S. v. Thompson,* 161 N. C., 238 and *S. v. Neville,* 175 N. C., 731. There are quite a number of courts that disagree with the principle established by *S. v. Graham, supra.* Some of these decisions are cited by the defendant in his brief. We do not think the action of the officers illegal in the present case." *S. v. Godette, supra,* at p. 503.

We find this in the Constitution of North Carolina, not cited by defendant, Article I, section 2: "That all political power is vested in, and derived from, the people; all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

The will of the people of North Carolina has been expressed on the very question presented on this appeal. On 27 May, 1908, the matter was submitted to the people of the State. The vote "For the manufacture and sale of intoxicating liquor" was 69,416, "Against the manufacture and sale of intoxicating liquor" was 113,612—total vote 183,028, majority against the manufacture and sale of intoxicating liquor was 44,196.

The Eighteenth Amendment to the Constitution of the United States is as follows: "After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquor within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited." Forty-five States ratified the amendment—North Carolina on 16 January, 1919. The "Volstead Act" was an Act of Congress, 28 October, 1919. An act supplemental to the National prohibition act was approved 23 November, 1921. These acts were passed to carry into effect the Eighteenth Amendment to the Constitution.

The General Assembly of North Carolina, Public Laws of N. C., 1923, ch. 1, C. S., 3411, passed "An act to make the State law conform to the National law in relation to intoxicating liquors," and is to some extent more stringent than the "Volstead Act." This act has been frequently upheld and construed by this Court. *S. v. McAllister,* 187 N. C., 400; *S. v. Beavers,* 188 N. C., 595; *S. v. Knight, ibid.,* 630; *S. v. Jarrett,* 189 N. C., 516; *S. v. Sigmon,* 190 N. C., 684; *S. v. Pierce,* 192 N. C., 766; *S. v. Mull,* 193 N. C., 668; *S. v. Hege,* 194 N. C., 526; *S. v. Dowell,* 195 N. C., 523.

The General Assembly of this State has recently passed an act to teach the children in the schools of the State the danger of intoxicating liquors and narcotics on the human system. Public Laws 1929, chapter 96, "An act to require the public schools of the State to furnish adequate and scientific instruction in the subject of alcoholism and narcotism." This is a wise preventive measure.

In *S. v. Campbell,* 182 N. C., at p. 914-5, the law is stated by *Clark, C. J.,* as follows: "In 3 Cyc., 886, it is said that where 'An offense is committed in the presence or view of an officer, within the meaning of the rule, authorizing an arrest without a warrant, when the officer sees it, although at a distance, or hears the disturbance created thereby and

proceeds at once to the scene thereof, or the offense is continuing, or has not been consummated at the time the arrest is made.' In the case at bar the officers had information, which proved to be correct, that the defendant was carrying on his person, concealed, a quantity of liquor in violation of the provisions of the Consolidated Statutes above quoted. The offense was continuing, and the sale had not been consummated at the time the arrest was made. In many cases, unless an arrest is made under these circumstances, the criminal would escape or the crime be committed before the officer could make affidavit and obtain a warrant. For instance, if the officers had information, which was reliable, that one was carrying a concealed weapon, or was on his way to commit an assault with it, surely it would be their duty to arrest the offender though our statute and our decisions require that in such case they should at once take him before a judicial officer and procure a warrant and institute a judicial investigation." *S. v. Fowler,* 172 N. C., 905; *S. v. Neville,* 175 N. C., 731; *S. v. Simmons,* 183 N. C., 684; *S. v. Jenkins,* 195 N. C., 747.

The witness for the State, officer Burleson, testified "took one-half gallon of liquor off of him."

The defendant, in his brief says: "Is evidence by an officer that he obtained one-half gallon of liquor sufficient to sustain a conviction, without further proof as to the kind, quality and strength of the liquor sufficient to show the same intoxicating?"

The Conformity Act, Public Laws 1923, chapter 1, section 1 (3 C. S., 3411(a), says "(1) The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt or fermented liquors, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one percentum or more of alcohol by volume, which are fit for use for beverage purposes," etc. *S. v. Sigmon, supra,* p. 690.

"Liquor," as the word is commonly used, means intoxicating liquor. *S. v. Gulcznski,* 120 A 88, 89 (Del.); *Shahan v. Hardwick,* 118 S. E., 575, 30 Ga. App., 526; *Clay v. State,* 102 S. E., 367, 24 Ga. App., 811; *Armstrong v. State,* 265, S. W., 672, 673, 150 Tenn., 416.

Generally the word "liquor" implies intoxicating liquor, and therefore proof that a defendant sold "liquor" is sufficient to show, in the absence of adverse testimony, that he sold intoxicating liquor. *Smith v. State,* 86 S. E., 283, 17 Ga. App., 118.

Every contention made by defendant has been frequently decided contrary to the position taken by him on this appeal.

In *S. v. McAllister,* 187 N. C., at p. 404, the following observation is made: "It is well said by *Clark, C. J.,* in the concurring opinion in *S. v.*

MacRae *v.* Fayetteville.

*Coleman,* 178 N. C., 762: 'The intention of the act may be tersely expressed in the phrase, "Taste not, touch not, handle not" the forbidden article (for beverage purposes). It is outlawed by the statute, just as dynamite or any poisonous drug, and for the same reason that the popular will has deemed this necessary for the public welfare, and made the violation of that will a crime.' "

In *S. v. Sigmon,* 190 N. C., at p. 692, we find: "The Legislature of North Carolina, part 3 C. S., 3411(b), has said: 'And all the provisions of this article shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.' This provision is the wisdom of ages. Solomon, the wisest man (Prov., ch. 23, v. 29, 32), said: 'Who hath woe? who hath sorrow? who hath contentions? who hath babbling? who hath wounds without cause? who hath redness of eyes? They that tarry long at the wine; . . . At the last it biteth like a serpent, and stingeth like an adder.' "

We fully set forth the law on this subject and again "write the vision and make it plain upon tables, that he may run that readeth." Hab. 2:2. We find

No error.