D & W, INC., T/A MERRY GO-GO ROUND, ON BEHALF OF ITSELF, AND DIAB, INC., T/A PECAN GROVE SUPPER CLUB, AND SUCH OTHER CITIZENS AND PLAINTIFFS OF MECKLENBURG COUNTY, NORTH CAROLINA, AFFECTED BY THE TURLINGTON ACT AND THE ALCOHOLIC BEVERAGE CONTROL ACT OF NORTH CAROLINA, v. THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, THE COUNTY OF MECKLENBURG, CLAWSON WILLIAMS, CHAIRMAN OF THE ALCOHOLIC BEVERAGE CONTROL BOARD OF THE STATE OF NORTH CAROLINA, JONES Y. PHARR, CHAIRMAN OF THE MECKLENBURG COUNTY ALCOHOLIC BEVERAGE CONTROL BOARD, HENRY SEVERS, JOHN HORD, ERNEST SELVY, GEORGE STEPHENS, W. FLEMING TALMAN, SR., LAWRENCE C. ROSE, G. W. BIRMINGHAM, JR., ROBERT I. CROMLEY, SR., RAY B. BRADY, CHARLES E. KNOX AND FRED C. COCHRANE.

(Filed 30 November, 1966.)

**1. Statutes § 5—**

The meaning of a statute must be determined from a construction of the language of the act itself considered *in pari materia* with any other statutes dealing with the same subject matter, together with its preamble, title, legislative history, etc., but the intent and meaning of the Legislature cannot be shown by the testimony of a member of the Legislature which passed the act.

**2. Injunctions § 5—**

Ordinarily, injunction will not lie to restrain the enforcement of a criminal law, either on the grounds that it is void or that the officials' interpretation of it is erroneous, and its validity or construction may be challenged only by way of defense to a criminal prosecution based thereon; the sole exception to this rule is when injunction is necessary to protect property or fundamental human rights guaranteed by the constitution.

**3. Same—**

Restaurateurs may not enjoin the enforcement of the State liquor regulations merely on the ground that the threatened enforcement is based on an erroneous interpretation and would preclude their customers from bringing taxpaid liquor on the premises for consumption with their meals and thus would result in financial loss to them by curtailing their business, since the threatened enforcement does not preclude plaintiffs from engaging in their constitutional right to earn a livelihood in the restaurant business or threaten any other constitutional right, and the mere fact that they may suffer some pecuniary loss from such enforcement is merely consequential.

**4. Appeal and Error § 2—**

Even though an action for injunctive relief is subject to dismissal on the ground that the relief is inapposite, the Supreme Court, on appeal from the granting of the injunction, may determine the merits of the controversy in the exercise of its discretionary jurisdiction when a question of great public interest is involved.

**5. Intoxicating Liquor § 1—**

The Turlington Act remains the law throughout this State except to the extent that it has been modified or repealed by the ABC Act, and the

ABC Act repeals only those provisions of the Turlington Act which are irreconcilable with the provisions of the ABC Act, construing the two Acts *in pari materia.*

**6. Statutes § 11—**

Repeal of a statute by implication is not favored, and in order for a later statute to repeal a former by implication the later statute must be irreconcilable with the former and the implication of repeal must be necessary.

**7. Intoxicating Liquor § 1— ABC Act does not permit possession by individual in private club or restaurant.**

Regardless of whether an area has elected to come under the ABC Act or not, a person may legally possess in this State alcoholic beverages as defined by G.S. 18-60 only in his private dwelling for the personal consumption of himself, his family and bona fide guests, G.S. 18-11, or while transporting not in excess of one gallon purchased out of the State or from an ABC store in this State to his private dwelling, G.S. 18-49, G.S. 18-58, and it is unlawful for a person, even in an area which has elected to come under the ABC Act, to transport to a restaurant, a private club, or other public place, alcoholic beverage as defined by the statute for consumption on the premises, notwithstanding the beverage may be concealed from public view.

**8. Constitutional Law § 10—**

Public policy is the exclusive prerogative of the General Assembly, and the courts may judicially interfere with acts of the legislative body only when they are beyond the bounds prescribed by the constitution.

APPEAL by defendants from *Riddle, J.,* April 1966 Special Criminal Session of MECKLENBURG.

Action by plaintiff, a corporation engaged in the restaurant business, in behalf of itself and seventeen other restaurants operating in Mecklenburg County, to enjoin the City of Charlotte, Mecklenburg County, the Alcoholic Beverage Control Board of the State of North Carolina, and the Alcoholic Beverage Control Board of Mecklenburg County from enforcing the Turlington Act as amended by the Alcoholic Beverage Control Act of 1937 (ABC Act).

Except as quoted, the allegations of plaintiffs' complaint and amended complaint are summarized as follows:

Mecklenburg County has elected to come under the ABC Act. The Attorney General, on March 31, 1966, advised the judge of the Recorder's Court of Charlotte that neither the Turlington Act nor the ABC Act permits one to possess strong alcoholic beverages at any place within "a wet territory" other than in one's dwelling as provided in G.S. 18-11 "and while being transported to one's dwelling as provided by law." Defendants have announced their intention to begin the immediate enforcement of the ABC Act in accordance with this interpretation, which is an erroneous one and con-

trary to the interpretation which defendants have given the law for a period of nineteen years or more.

"That since the passage of the Alcoholic Beverage Control Act of 1937 it has become common practice in the City of Charlotte, County of Mecklenburg, and the State of North Carolina to condone, permit, sanction, encourage, and allow persons to take intoxicating liquor into public places, such as owned by the plaintiffs to wit: restaurants, night clubs, country clubs, Veterans' clubs, Elks Clubs, and others, and consume same provided that same was not openly displayed on the table and provided same was in a 'brown (or other color) bag', brief case, pocket, or other means of obscuring same.

"That for a period of 19 years or more, the laws have been enforced in this County by the defendants pursuant to the Alcoholic Beverage Control Act. That these plaintiffs commend the defendants for their successful enforcement of said act; even though the defendants have required that the plaintiffs' customers conceal their tax-paid alcoholic beverages in 'Brown bags' underneath their tables at restaurants, night clubs, bottle clubs, country clubs, etc., much to the inconvenience of these plaintiffs as citizens and their customers. . . . (T)he plaintiffs being law abiding citizens have complied or attempted to comply with the defendants' request, require their customers to keep the bottles in 'brown bags' or otherwise concealed and under the table of the said customer. On this point the defendant must admit that the plaintiffs have been overly cooperative. . . . (S)uch successful enforcement of the laws by the defendants and such wonderful cooperation by the plaintiffs allowed our community to prosper. . . ."

The enforcement contemplated by defendants would be an interference with plaintiffs' individual liberty and would deprive them of their rights under Sections 1 and 17 of Article I of the North Carolina Constitution to earn a livelihood for that it would either force plaintiffs out of business or cause them to lose "considerable business." Plaintiffs and others similarly situated have no adequate remedy at law for that actions at law would subject them to (1) inconveniences, fines and penalties; (2) criminal actions; (3) the loss of their beer and wine licenses; and (4) the necessity to "police" their patrons. Plaintiffs pray both a temporary and a permanent injunction prohibiting defendants from enforcing the law according to their announced intentions.

On April 7, 1966, Judge Riddle signed an order directing defendants to show cause on April 18, 1966, why the temporary injunction

requested by plaintiffs should not be granted. At the appointed time, the matter came on for hearing. Two restaurateurs, testifying for plaintiffs, said that since defendants had announced the new policy, their businesses had declined $2,000.00 a week; that 90% of their patrons "used setups and consumed alcoholic beverages other than beer and wine while at the restaurants." A third said that his business had declined 15% to 20% with a resulting loss of $300.00 to $400.00 a week. Each proprietor said that his restaurant had a beer license; that he allowed customers to bring tax-paid whiskey in bags onto his premises for consumption before or during their meal; and that it would be impossible to prevent the practice unless patrons were "harassed, frisked, or searched" and unless the restaurant had "a force of ten to every ten tables."

In addition to the foregoing testimony, the verified complaint was introduced as an affidavit. The court also permitted, over defendants' objection, the affidavit of Frank Snepp, Esquire, a Charlotte attorney and a member of the North Carolina General Assembly during its 1959 regular session. Mr. Snepp averred that the purpose of Section 2 of Chapter 745 of the 1959 Session Laws, which chapter amended General Statutes § 18-78.1(5), was "to allow the holders of beer and wine permits to permit patrons to enter on their premises with tax-paid whiskey and to possess and consume it there."

At the conclusion of plaintiffs' evidence, defendants moved that the action be dismissed for a lack of equity. The judge denied the motion and entered an order in which he found, *inter alia*, (a) that the plaintiffs and others similarly situated have and will suffer severe and irreparable economic loss, injury and hardship by the enforcement of the law as enunciated by the State Alcoholic Beverage Control Board and the Attorney General's opinion of March 31, 1966; (b) the plaintiffs have no adequate remedy at law and "equitable relief is the only real relief which is available to them." The judge concluded as a matter of law that, in the so-called conforming, or wet, jurisdictions:

"(A) judicial interpretation of the Turlington Act as modified by the Alcoholic Beverage Control Act of 1937, as amended from time to time, (a) does not prohibit the possession of tax-paid alcoholic beverages not in the purchaser's homes or being transported by the purchaser as permitted by law, and not being displayed at athletic contests or places similar to athletic contests; and, (b) that there is no violation of the criminal laws of the State of North Carolina when members of bona fide private clubs maintain on their private premises, in individual private lockers, small quantities of alcoholic beverages,

for their sole use, from time to time, for such persons on said private premises, so long as (1) such member lawfully acquired the alcoholic beverage in question; (2) such member had the sole control over the private locker and its contents; and (3) the said alcoholic beverages were kept for the sole use of the member and not for the sale, exchange, distribution or division among the members of the club or other persons."

Pursuant to the foregoing findings and conclusions, Judge Riddle, "in his equitable jurisdictions," restrained defendants, pending further orders of the court, from

"arresting, charging, or in any manner interfering with plaintiffs or any person in Charlotte, Mecklenburg County, or in any other wet or conforming area that has elected to come under the provisions of the Alcoholic Beverage Control Act of 1937 (G.S. 18-36 et seq.), for the consumption, display or possession for his own personal use of tax-paid alcoholic beverages, except insofar as such consumption, display or possession for his own personal use is expressly prohibited by the provisions of the said Alcoholic Beverage Control Act of 1937, including the prohibitions contained in G.S. 18-47 and G.S. 18-51. . . ."

From the judgment entered, defendants appeal.

*Plumides & Plumides; Jerry W. Whitley for plaintiff appellees.*
*T. W. Bruton, Attorney General, James F. Bullock, Assistant Attorney General for defendant appellants.*
*John H. Small, Amicus Curiæ.*

SHARP, J. Defendants' first assignment of error challenges the admissibility of the affidavit of Mr. Frank Snepp, a member of the Legislature of 1959, to show the legislative purpose in enacting Chapter 745, Session Laws of 1959, which amended G.S. 18-78.1. This evidence was incompetent. More than a hundred years ago this Court held that "no evidence as to the motives of the Legislature can be heard to give operation to, or to take it from their acts. . . ." *Drake v. Drake,* 15 N.C. 110, 117. The meaning of a statute and the intention of the legislature which passed it cannot be shown by the testimony of a member of the legislature; it "must be drawn from the construction of the act itself." *Goins v. Indian Training School,* 169 N.C. 736, 739, 86 S.E. 629, 631. In construing a statute, Merrimon, J., laid down the rule in *State v. Partlow,* 91 N.C. 550, 552:

"Its meaning in respect to what it has reference and the objects it embraces, as well as in other respects, is to be ascer-

tained by appropriate means and *indicia,* such as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia,* the preamble, the title, and other like means. But the meaning must be ascertained from the statute itself, and the means and signs to which, as appears, upon its face, it has reference. It cannot be proved by a member of the legislature or other person, whether interested in its enactment or not. A statute is an act of the legislature as an organized body. It expresses the collective will of that body, and no single member of it, or all the members as individuals, can be heard to say what the meaning of the statute is. It must speak for and be construed by itself, by the means and signs indicated above. Otherwise, each individual might attribute to it a different meaning, and thus the legislative will and meaning be lost sight of. Whatever may be the views and purposes of those who procure the enactment of a statute, the legislature contemplates that its intention shall be ascertained from its words as embodied in it. And courts are not at liberty to accept the understanding of any individual as to the legislative intent."

Defendants' second assignment of error is that the court erred in denying their motion to dismiss the action. This motion was based on the ground that equity will not interfere to prevent the enforcement of the criminal law. The general rule is well settled: Equity will not restrain the enforcement of a criminal statute or regulatory ordinance providing a penalty for its violation; it may be challenged and tested only by way of defense to a criminal prosecution based thereon. See *Davis v. Charlotte,* 242 N.C. 670, 89 S.E. 2d 406. If the act is unconstitutional or, if valid, it is being enforced in an unlawful way because of a misinterpretation, these defenses will defeat any prosecution based on it. *Thompson v. Lumberton,* 182 N.C. 260, 108 S.E. 722; *Paul v. Washington,* 134 N.C. 363, 47 S.E. 793; 2 Strong, N. C. Index, Injunctions § 5 (1959); 28 Am. Jur., Injunctions § 189 (1959). The legal remedies of "trial by jury, *habeas corpus,* motion, and plea are abundant safeguards in such instances, especially in the light of the serious consequences likely to follow the arbitrary tying of the hands of those intrusted with the enforcement of penal statutes." *Monroe Greyhound Ass'n v. Quigley,* 223 N.Y. Supp. 830, 831. To the general rule, however, there is an exception: If the statute or ordinance itself is void, its enforcement will be restrained where there is no adequate remedy

at law and such action is necessary to protect property and fundamental human rights which are guaranteed by the constitution. *Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 125 S.E. 2d 764; *Speedway, Inc. v. Clayton,* 247 N.C. 528, 101 S.E. 2d 406; *Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851; *Davis v. Charlotte, supra; McCormick v. Proctor,* 217 N.C. 23, 6 S.E. 2d 870; ·28 Am. Jur., Injunctions § 188 (1959) ; 43 C.J.S., Injunctions § 158 (1945). The constitutionality of a statute, however, may never be tested by injunction unless a plaintiff alleges and shows that its enforcement will cause him individually to suffer a personal, direct, and irreparable injury to some constitutional right. A party who is not personally injured by it may not assail a statute's validity. *Fox v. Commissioners of Durham,* 244 N.C. 497, 94 S.E. 2d 482; *Newman v. Comrs. of Vance,* 208 N.C. 675, 182 S.E. 453.

Plaintiffs here do not question the validity of the Turlington Act or the ABC Act of 1937; they only question defendants' interpretation of these Acts. The general rule that equity will not interfere by injunction with police officers in the enforcement of the criminal laws applies, however, whether a plaintiff contends the act is void or the officials' interpretation of it is erroneous. 28 Am. Jur., Injunction § 183 (1959) ; 43 C.J.S., Injunctions § 156, p. 771 (1945).

"The fact that peace officers may be mistaken in their conclusions of fact, or in their interpretation of the law, or of any statutory provision, does not authorize a court of equity in restraining them in their future efforts to conscientiously enforce the law. They may make mistakes, and those arrested may be acquitted, but such matters do not justify a blanket injunction against honest law enforcement." *Wood Bros. Thresher Co. v. Eicher,* 231 Iowa 550, 1 N.W. 2d 655, 660. *Accord, Monroe Greyhound Ass'n v. Quigley, supra; Rutzen v. City of Belle Fourche,* 71 S.D. 10, 20 N.W. 2d 517; *P. E. Harris & Co. v. O'Malley,* 2 F. 2d 810 (9th Cir. 1924).

There is nothing in the case at bar to take it out of the fundamental rule that equity will not interfere to prevent the enforcement of the criminal law. Plaintiffs do not contend that they have a constitutional right to provide a place for their patrons to consume alcoholic beverages as defined by G.S. 18-60. They assert that the law does not prohibit them from doing so and that their patrons or customers have a legal right "to bring a small quantity of tax-paid whiskey" to a restaurant for their own use, and that plaintiffs will lose business if their customers are arrested for possessing and consuming intoxicating beverages in restaurants. Obviously, plaintiffs'

constitutional right to earn a livelihood by engaging in the restaurant business is not infringed by either the Turlington Act or the ABC Act.

If it were to be assumed that the 1966 opinion of the Attorney General which triggered this action constituted an erroneous interpretation of these two enactments and that defendants were acting upon a misapprehension of the meaning of those laws when they announced their intention to enforce them in accordance with that opinion, still plaintiffs have shown no direct, personal injury. If fewer people "eat out" because they cannot take their liquor away from home and plaintiffs' income is reduced in consequence, the loss is merely consequential. Furthermore, the fact that they may suffer some pecuniary loss from such enforcement is not the test. *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650.

The action of the court below in issuing the injunction in question is without sanction in precedent or principles of equity. Ordinarily, in a case thus constituted we would decline to pass upon the question presented and order the action dismissed. *Dare County v. Mater,* 235 N.C. 179, 69 S.E. 2d 244; *Clinton v. Ross,* 226 N.C. 682, 40 S.E. 2d 593; *Jarrell v. Snow,* 225 N.C. 430, 35 S.E. 2d 273; *Motor Service v. R. R.,* 210 N.C. 36, 185 S.E. 479. Such procedure, however, would not end this controversy, which has become a matter of great public interest. As Barnhill, J. (later C.J.), said in *Suddreth v. Charlotte, supra* at 634, 27 S.E. 2d at 654, dismissal would "tend to prolong an unfortunately provocative situation. . . . Hence, we have exercised our discretionary right to express an opinion on the merits of the exceptive assignments of error. . . ." See also *Turner v. New Bern,* 187 N.C. 541, 122 S.E. 469; 1 Strong, N. C. Index, Appeal and Error § 2 (1957).

We come, then, to the determinative question in this controversy: Where and under what circumstances in an area which has elected to come under the ABC Act (wet, or conforming, area) may one legally possess alcoholic beverages as defined in G.S. 18-60, *i. e.,* all beverages containing more than 14 per centum of alcohol? (Beer, wine, and ales containing a lower alcoholic content are eliminated by this definition.) This is a question which has not heretofore been squarely presented to this Court. To find the answer we must construe the Turlington Act (N. C. Pub. Laws 1923, ch. 1, codified as G.S. 18-1 through G.S. 18-30) as amended by the ABC Act (G.S. 18-36 through G.S. 18-62). Defendants contend that one may legally possess alcoholic beverages in any area in North Carolina (whether it be wet or dry) at the following places only: (1) in his own dwelling as provided by G.S. 18-11; (2) while transporting not more than

one gallon from a point outside the State to a point inside the State as provided in G.S. 18-58, or from an ABC store in the State to his dwelling as provided by G.S. 18-49. Plaintiffs, although conceding that the statutes in question "are somewhat ambiguous and are subject to construction," contend that in a wet, or conforming, area such as Mecklenburg County, "possession of alcoholic beverages purchased from the ABC system is legal without restriction as to place" so long as the possession is not for the purpose of sale. More specifically, they contend that a person can legally bring "a small quantity of tax-paid liquor" with him to a restaurant, and that restaurants and clubs selling beer and wine under an "on premise" license (G.S. 18-72) may legally permit the consumption of alcoholic beverages on their premises. They insist that G.S. 18-78.1(5), as rewritten by the General Assembly in 1959, no longer forbids the consumption of alcoholic beverages on such licensed premises.

The Turlington Act is still the primary law in every area which has not elected to come under the ABC Act. G.S. 18-61; *State v. Anderson* and *State v. Brown*, 265 N.C. 548, 144 S.E. 2d 581; *State v. Welch*, 232 N.C. 77, 59 S.E. 2d 199; *State v. Wilson*, 227 N.C. 43, 40 S.E. 2d 449; *State v. Davis*, 214 N.C. 787, 1 S.E. 2d 104. Where liquor stores have been established under the ABC Act, the Turlington Act is the law except to the extent it has been modified or repealed by the ABC Act (N. C. Pub. Laws 1937, ch. 49). *State v. May*, 248 N.C. 60, 102 S.E. 2d 418; *State v. Hill*, 236 N.C. 704, 73 S.E. 2d 894; *State v. Barnhardt*, 230 N.C. 223, 52 S.E. 2d 904; *State v. Carpenter*, 215 N.C. 635, 3 S.E. 2d 34; *State v. Davis, supra*. The ABC Act contains no clause specifically repealing the Turlington Act or any other provisions of the law relating to alcoholic beverages. It therefore repealed only those laws which are "utterly irreconcilable" with it. "Repeals of statutes by implication are not favored, and, to work a repeal, the implication must be necessary." *State v. Epps*, 213 N.C. 709, 716, 197 S.E. 580, 584. "The two acts constitute the body of our law relating to the purchase, possession, and sale of intoxicating liquor and must be construed *in pari materia*." *State v. Avery*, 236 N.C. 276, 279, 72 S.E. 2d 670, 672. *Accord, State v. Suddreth*, 223 N.C. 610, 27 S.E. 2d 623. The two acts have been thus construed since the passage of the ABC Act and the rule "is not now to be broken in upon."

In 1935, by two acts (N. C. Pub. Laws 1935, ch. 418 and ch. 493), the General Assembly authorized the sale of alcoholic beverages in 18 counties under the control of a County Liquor Commission or an Alcoholic Beverage Control Board. A notable difference existed between these two acts and the ABC Act, which specifically

repealed them: The former explicitly exempted each of the 18 counties to which they applied from the application of the Turlington Act when the voters approved the establishment of liquor stores; the ABC Act does not exempt any county from Turlington's application.

Under the Turlington Act it is unlawful for any person anywhere in the State to "manufacture, sell, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor" as defined in the Act (G.S. 18-2) *except:* (1) It is not unlawful to possess liquor in one's private dwelling while it is occupied and used as his dwelling only and provided "such liquor is for use only for the personal consumption of the owner thereof, and his family residing in such dwelling, and of his bona fide guests when entertained by him therein." G.S. 18-11. (2) It is not unlawful to possess liquor for nonbeverage purposes and wine for sacramental purposes as provided in G.S. 18-2, 18-20, and 18-21. In other words, the Turlington Act was strict prohibition; it was even more stringent than the Federal Volstead Act. *State v. Sigmon,* 190 N.C. 684, 130 S.E. 854; *State v. Hickey,* 198 N.C. 45, 150 S.E. 615. For all practical purposes, under Turlington, the only place one could legally possess any intoxicating liquor was at home. *State v. Shinn,* 238 N.C. 535, 78 S.E. 2d 388. Even so, the Turlington Act made it unlawful for a person to purchase or transport intoxicating liquor anywhere in the State. *State v. Winston,* 194 N.C. 243, 139 S.E. 240. Upon the enactment of the ABC Act, it became lawful to transport, for one's own personal use, not in excess of one gallon *if* the beverage was legally acquired, and *if* it was still in its original container, seal and cap undisturbed. Specifically, G.S. 18-49 authorized such transportation from a county in North Carolina coming under the provisions of the ABC Act to or through another county in North Carolina not coming under the provisions of this Act. G.S. 18-58, without making any distinction between dry and wet counties, authorized one to purchase "outside of this State and bring into the same for his own personal use" not more than one gallon. Thus, not more than one gallon can legally be brought from outside the State into either area. G.S. 18-49 does not specifically authorize the transportation of any quantity of  alcoholic beverage from an ABC store to any place in the wet county where purchased. Obviously, however, the right to buy the liquor includes the right to take it home. It was equally obvious that the legislature intended G.S. 18-49 to have statewide application. To have licensed residents of a wet county to transport an unlimited quantity of liquor within the county would have defeated its stated purpose "to establish a system of control of the sale of certain alcoholic beverages in North Carolina." N. C.

Pub. Laws 1937, ch. 49, § 1. Such was the view of this Court in 1938, one year after the ratification of the ABC Act, when it said:

"The expressed purpose looking to uniformity and the several provisions of the act make it apparent that certain provisions of the 1937 act are to be given State-wide effect. This is particularly true as to the transportation provisions with which the Turlington Act, ch. 1, Public Laws 1923, conflicts only in respect to liquor being transported to Alcoholic Beverage Control Stores, and whiskey purchased from a County Store and being transported in a sealed container in an amount not to exceed one gallon for personal use, and as to the transportation of a like quantity brought into the State in sealed packages and upon which the taxes have been paid. Hence, it is still unlawful in this State for any person to possess or transport intoxicating liquors for any purpose other than those specified in the act or in a quantity in excess of one gallon, unless such liquor is in actual course of delivery to a County Store. Therefore, ch. 1, Public Laws 1923, in so far as it deals with the transportation within the State of intoxicating liquors is not inconsistent with the 1937 act except in the indicated particulars and it is still in force." *State v. Davis, supra* at 791, 1 S.E. 2d at 106-7.

Neither G.S. 18-49 nor G.S. 18-58 specifically designates the place to which liquor legally purchased may be transported. Such a designation was unnecessary. Since the only place where liquor may be legally possessed is in one's private dwelling, that is the only place to which it may be legally transported. See *State v. Welborn,* 249 N.C. 268, 271, 106 S.E. 2d 204, 205.

The legislature having made it lawful for one to purchase and transport not more than one gallon of alcoholic beverages from an ABC store to one's home for the purposes mentioned in G.S. 18-49, this Court held that so long as one did not possess more than one gallon in his home he was protected from the presumption of illegality, or the rule of evidence, created by G.S. 18-11 and G.S. 18-32(2). To that extent only, G.S. 18-11 and G.S. 18-32(2) were modified by G.S. 18-49. *State v. Suddreth, supra; State v. Barnhardt, supra; State v. Hill, supra.* Although one may possess in his home an unlimited amount of alcoholic beverages for the use of himself and his bona fide guests, if he possesses more than one gallon, the burden devolves upon him to establish not only that the possession thereof comes within the exceptive provisions of G.S. 18-11, but also "that it was legally acquired and transported to his private dwelling and

there kept, not for sale, but for family uses only." *State v. Barn-hardt, supra* at 228, 52 S.E. 2d at 907.

Other than excluding the possession of one gallon of alcoholic beverages in one's home from the presumption created by G.S. 18-11 and G.S. 18-32(2) and the license given by G.S. 18-49 and G.S. 18-58 to transport not more than one gallon for the purpose therein stated, the ABC Act does not *ipsissimis verbis* grant any greater privilege to possess alcoholic beverages than did the Turlington Act.

The Turlington Act (G.S. 18-15) forbids any corporation, club, association, or person, to keep or maintain, alone or by association with others, "a clubroom or other place where intoxicating liquor is received, kept, or stored for barter, sale, exchange, distribution, or division among the members of any such club or association . . . or among any other persons by any means whatever. . . ." It also forbids any corporation, club, association, or person from acting as agent in procuring or keeping intoxicating liquor for any such purpose. No provision in the ABC Act modifies this section.

The Turlington Act (G.S. 18-18) provides: "It is unlawful for any person to serve with meals, or otherwise, any liquor or intoxicating bitters, where any charge is made for such meals or service." No provision of the ABC Act modifies this section, which recognizes the right given one by G.S. 18-11 to serve liquor in one's home to one's bona fide guests and outlaws serving it with meals at any place where a charge is made for the meal or service. Restaurants charge for meals and their service! The prohibition of G.S. 18-18 extends to *any person:* It thus includes the restaurateur and his employees; the host who entertains his guests at a restaurant or club; and the patron who brings his bottle and serves himself — none of whom may legally transport the liquor to the restaurant in the first place!

Plaintiffs assert that nowhere in the ABC Act, except in G.S. 18-47 and G.S. 18-51, is the possession, display, and consumption of alcoholic beverages prohibited. They argue, therefore, that in wet counties it is permitted at all other places. G.S. 18-47 prohibits drinking on the premises of liquor stores and other property used by a county ABC Board. G.S. 18-51 makes it unlawful for any person to drink alcoholic beverages or to offer a drink to another upon the premises occupied by an ABC store or a county ABC Board. It also makes it unlawful for any person "to be or become intoxicated or to make any public display of any intoxicating beverages at any athletic contest or public place in North Carolina." In G.S. 18-47 and G.S. 18-51, the legislature was giving attention to specific places where it obviously thought special hazards existed. These two statutes define additional criminal offenses and were de-

signed, *inter alia,* to prevent drinking before driving. It is a reasonable assumption that one who drinks at home is less likely to be guilty of drunken driving than one who drinks away from home. To hold that by specifically forbidding the drinking of intoxicants on premises controlled by ABC Boards and by proscribing intoxication and the public display of intoxicating beverages at athletic contests the General Assembly impliedly repealed the application of G.S. 18-2, G.S. 18-15, and G.S. 18-18 to wet counties and authorized unrestricted possession at all other public places is to attribute to it a furtiveness in dealing with the liquor question which that legislative body does not merit. As defendants point out in their brief, such a construction would mean that in a wet county liquor might be displayed and consumed, not only in restaurants, but also in stores, public buildings (including courthouses), parks, swimming pools — in every place except on ABC premises, public roads and streets, or at athletic contests. Such a drastic change in the law is not so readily implied.

It is noted that the Turlington Act proscribed both whiskey and beer. G.S. 18-1; *State v. Anderson* and *State v. Brown, supra.* The Beverage Control Act of 1939 (G.S. 18-63 through G.S. 18-93), which relates to unfortified wines, beer, ale, porter, and other brewed or fermented beverages defined by G.S. 18-64, specifically provides (G.S. 18-66): "The purchase, transportation and possession of beverages enumerated in § 18-64 by individuals for their own use are permitted without restriction or regulation." This is plain talk indeed. It cannot, therefore, be doubted that beer and the other beverages defined in G.S. 18-64 are exempted from the Turlington Act. With reference to the stronger beverages defined by G.S. 18-60, the legislature included in the ABC Act no provision similar to G.S. 18-66. When it decides to exempt these alcoholic beverages from the Turlington Act, it will say so in language equally clear. In the meantime, "it is not ours to make the law. That is legislative. It is ours to interpret the law as the legislature enacts it." *State v. Suddreth, supra* at 616, 27 S.E. 2d at 626.

Plaintiffs' contention that the 1959 amendment to G.S. 18-78.1(5) (N. C. Pub. Laws 1959, ch. 745, § 2) authorized the consumption of tax-paid whiskey on the premises of those places holding beer and wine permits from the ABC Board is likewise without merit. Prior to June 4, 1959, G.S. 18-78.1(5) provided that no holder of a license authorizing the retail sale of fortified wines and beverages as defined in G.S. 18-64 for consumption on or off the premises where sold shall "sell, offer for sale, possess, or permit the consumption on the licensed premises of any kind of alcoholic liquors the sale of which

is not authorized under his license." Since the 1959 amendment, this statute provides that no such licensee shall "sell, offer for sale, possess, or *knowingly* permit the consumption on the licensed premises of any kind of alcoholic liquors the sale or possession of which is not authorized *by law.*" (Italics denote the changes.)

In *Campbell v. Board of Alcoholic Control,* 263 N.C. 224, 139 S.E. 2d 197, the petitioner appealed from an order of the State Board of Alcoholic Control which suspended his retail license to sell beer because of sales to minors under the age of 18. In discussing the 1959 amendment to G.S. 18-78.1(5), Higgins, J., said:

> "(I)t appears by the punctuation that the word 'knowingly' does not modify sell, offer for sale, or possess, but does modify 'permit the consumption on the premises.' . . . The proprietor is responsible if he knowingly permits another to drink on his premises *even if he carried his own beverage." Id.* at 226, 139 S.E. 2d at 199. (Emphasis added.)

*Cf. Boyd v. Allen,* 246 N.C. 150, 97 S.E. 2d 864. A restaurateur with a beer and wine license might derive some comfort from the addition of the word *knowingly* in subsection 5 — provided his "brown bag" clientele was sufficiently careful and discreet. No comfort, however, is provided by substituting the words *by law* for *under his license,* for his patrons may not legally transport alcoholic beverages to his premises or possess them there — and neither he nor they, of course, is authorized to sell them. Again we say that had the legislature intended to permit the consumption of strong alcoholic beverages in restaurants, stores, filling stations, and on the premises of every business which has a beer or wine license, it would have "spelled out" this drastic change in the law. Any such interpretation would disrupt the plan of control set out in G.S. 18-78.1(5), and abolish the safeguards by which the legislature has attempted to protect the traveling public from drunken drivers.

> "Repeals by implication are not favored. A statute will not be construed as repealing prior acts on the same subject (in the absence of express words to that effect) unless there is an irreconcilable repugnancy between them, or unless the new law is evidently intended to supersede all prior acts on the matter in hand and to comprise in itself the sole and complete system of legislation on that subject." Black on Interpretation of Laws § 53 (1st Ed. 1896).

In brief summary, the law with reference to the possession of whiskey or similar intoxicating beverages is this: Whether the area

be wet or dry, conforming or nonconforming, a person may legally possess alcoholic beverages as defined by G.S. 18-60 only in his private dwelling as provided by G.S. 18-11 and while transporting not in excess of one gallon purchased out of the State or from an ABC store within the State to his dwelling as provided by G.S. 18-49 and G.S. 18-58. This has been the law since the passage of the ABC Act of 1937.

It is the prerogative and function of the legislative department of the government to make the law. Only the General Assembly, therefore, can establish the public policy of this State with reference to alcoholic beverages. The courts are not the judges of the wisdom or impolicy of a law; their province is to interpret and apply the law which the legislature has written. *Trust Co. v. Green,* 236 N.C. 654, 73 S.E. 2d 879; *State v. Scoggin,* 236 N.C. 19, 72 S.E. 2d 54; *Ferguson v. Riddle,* 233 N.C. 54, 62 S.E. 2d 525; *State v. Means,* 175 N.C. 820, 95 S.E. 912. The judiciary will interfere with acts of the legislative body only when they are beyond the bounds prescribed by the constitution. *State v. Revis,* 193 N.C. 192, 136 S.E. 346.

The judgment of the court below is

Reversed.