POOR RICHARD'S, INC. D/B/A POOR RICHARD'S v. HERMAN STONE, POLICE
CHIEF CHAPEL HILL, NORTH CAROLINA AND LINDY PENDERGRASS,
SHERIFF, ORANGE COUNTY, NORTH CAROLINA

No. 8615SC1149

(Filed 16 June 1987)

**1. Declaratory Judgment Act § 9— sufficiency of judgment**

The trial court's order granting summary judgment for plaintiff in a declaratory judgment action was sufficient even though it did not explicitly state that the statute in question was unconstitutional or the grounds for the judgment where the constitutionality of the statute was the only issue before the court and its unconstitutionality could be the only basis for the court's judgment, and the judgment declared the rights of the parties and effectively disposed of the dispute.

**2. Injunctions § 12.3; Rules of Civil Procedure § 65— injunctive order—failure to state reason for issuance**

An injunctive order which does not state the reason for its issuance is merely irregular and not void; it is properly corrected by a motion made before the trial court and will not be corrected on appeal. N.C.G.S. § 1A-1, Rule 65(d).

**3. Constitutional Law § 12.1— regulation of businesses purchasing military property—unconstitutionality of statute**

Art. I of G.S. Ch. 127B, which requires businesses purchasing or selling military property to obtain a license, post a $1,000 bond, provide certain personal information about the owners, and maintain certain records concerning acquisitions of military property, is an unreasonable exercise of the police power and violates the law of the land clause of Art. I, § 19 of the N.C. Constitution.

Judge JOHNSON dissenting.

APPEAL by the State from *Battle, Judge*. Judgment entered 17 March 1986 in Superior Court, ORANGE County. Heard in the Court of Appeals 31 March 1987.

This is a declaratory judgment action brought to have Article 1 of Chapter 127B of the General Statutes (hereafter "the statute") declared unconstitutional. Plaintiff is a North Carolina

corporation engaged in the business of retail sales. A portion of the merchandise which plaintiff buys and sells is "military property" as defined in G.S. 127B-2. The statute requires businesses which purchase or sell "military property" to obtain a license from the appropriate local governing body, present certain personal information about the owner(s), and post a $1,000 bond. It also requires those businesses to maintain certain records regarding its acquisitions of military property and to keep those records open for inspection by law enforcement officers. Violation of the statute, which became effective on 1 October 1985, constitutes a misdemeanor.

Plaintiff filed this action on 23 October 1985, challenging the constitutionality of the statute on eight separate grounds. Plaintiff's complaint also contained a motion for an order temporarily restraining the statute's enforcement. The trial court immediately granted plaintiff's motion for a temporary restraining order. The temporary restraining order was later converted to a preliminary injunction by consent of the parties. On 7 March 1986, plaintiff moved for summary judgment, submitting affidavits from four different owners of retail stores which buy and sell "military property." Each of the affiants stated that compliance with the statute would cause them substantial and irreparable economic loss. Plaintiff and one other affiant said that they would be forced to abandon that part of their business dealing with military property if they were required to comply with the statute's provisions. On 17 March 1986, the trial court issued an order granting plaintiff's motion for summary judgment and permanently enjoining defendants from enforcing the statute. By consent of the parties and approval of the trial court, the State was made a party defendant to the action and the judgment was extended to all law enforcement agencies in the State. The State, as intervenor-defendant, appeals.

*Poyner & Spruill, by J. Phil Carlton and Susanne F. Hayes, for the plaintiff-appellee.*

*Attorney General Thornburg, by Special Deputy Attorney General David S. Crump, for the State.*

EAGLES, Judge.

I

[1]   The State's first two assignments of error concern the sufficiency of the trial court's order. The State argues that the order (1) does not adequately declare the rights of the parties, and (2) fails to state the reasons for issuing the permanent injunction. Consequently, the State contends that this case must be remanded for entry of a more specific order. We disagree.

A declaratory judgment action is a proper means of challenging the constitutionality of a statute which adversely affects the plaintiff. *Jernigan v. State*, 279 N.C. 556, 184 S.E. 2d 259 (1971). The trial court's declaratory judgment need not be in any particular form so long as it actually decides the issues in controversy. *See* 26 C.J.S. Declaratory Judgments, sections 158, 161 (1956). Although the trial court's judgment here does not explicitly state that the statute is unconstitutional, or the grounds for its judgment, it clearly declares the rights of the parties and effectively disposes of the dispute.

Plaintiff's complaint alleged eight separate theories under which it claimed the statute was unconstitutional. Plaintiff sought no declaration other than that the statute was unconstitutional. Since the only issue before the trial court was the constitutionality of the statute, its unconstitutionality could be the only basis for the trial court's judgment. Therefore, the order granting summary judgment for plaintiff, even without an explicit recitation that the statute was unconstitutional, disposed of the controversy, declaring, in effect, that plaintiff was not obligated to comply with the statute and that defendant had no right to enforce it. It was unnecessary for the trial court to go further and state the ground or grounds upon which it concluded the statute was unconstitutional.

[2]   The State's second contention that the case must be remanded because the order fails to state the reason for issuing the injunction, is also without merit. While Rule 65(d) of our Rules of Civil Procedure states, in pertinent part, that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance . . .", an injunctive order which does not state the reasons for its issuance is merely irregular, not void,

and must be obeyed by the parties until corrected. *Manufacturing Co. v. Union*, 20 N.C. App. 544, 202 S.E. 2d 309, *cert. denied*, 285 N.C. 234, 204 S.E. 2d 24 (1974). Irregular orders of this kind are properly corrected by a motion made before the trial court and will not be corrected on appeal. *Schultz and Assoc. v. Ingram*, 38 N.C. App. 422, 248   S.E. 2d 345 (1978).

## II

[3]   By its last assignment of error, the State argues that the trial court erred in granting summary judgment for plaintiff. In reviewing an order granting summary judgment, we must determine whether the trial court correctly found that there was no genuine issue of material fact for trial and that the prevailing party was entitled to judgment as a matter of law. *Hall v. Kemp Jewelry*, 71 N.C. App. 101, 322 S.E. 2d 7 (1984). The State does not dispute that summary judgment is appropriate where, as here, the case involves only a question of law. Instead, it argues that the statute is not unconstitutional and, consequently, that summary judgment for plaintiff should have been denied. We disagree and hold that Article 1 of Chapter 127B of the General Statutes violates Article I, section 19 of the North Carolina Constitution.

Article I, section 19 of our Constitution provides in part, that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land." N.C. Const., art. I, section 19. The term "law of the land" is synonymous with "due process of law," *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979), and serves to limit the State's police power to actions which have a rational, real, or substantial relation to the public health, morals, order, safety or general welfare. *In re Hospital*, 282 N.C. 542, 193 S.E. 2d 729 (1973). In its brief, the State argues that the statute is a reasonable exercise of the police power because it (1) deters theft of property from military bases located in North Carolina, and (2) limits the places where criminals may easily dispose of such property. Assuming *arguendo* that the State's police power extends to aiding the federal government in preventing theft from U.S. military bases, *but cf.*, *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 350 S.E. 2d 365 (1986), *disc. rev. denied*, 319 N.C. 411, 354 S.E. 2d 730 (1987) (county had no legitimate interest in assisting the enforcement of U.S.

Marine Corps regulations), we nevertheless hold that the statute is an unreasonable, and therefore unconstitutional, means of achieving that purpose.

The right to work and earn a livelihood is a property right, considered "fundamental" under the North Carolina Constitution. *Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851 (1957); N.C. Const. art. I, section 1. Consequently, our law requires that regulation of otherwise lawful occupations and businesses be "based on some distinguishing feature in the business itself or in the manner in which it is ordinarily conducted, the natural and probable consequence of which, if unregulated, is to produce substantial injury to the public peace, health, or welfare." *State v. Harris*, 216 N.C. 746, 758-759, 6 S.E. 2d 854, 863 (1940). We do not find the required distinguishing feature in plaintiff's business.

When determining whether the State may constitutionally regulate a particular business or occupation, our courts have distinguished those businesses which require special skill or knowledge, or threaten harm to the public, and those which do not. *Treants Enterprises, Inc. v. Onslow County, supra*. The State may, for instance, regulate the practice of medicine, *State v. Van Doran*, 109 N.C. 864, 14 S.E. 32 (1891), and pharmacy, *Board of Pharmacy v. Lane*, 248 N.C. 134, 102 S.E. 2d 832 (1958), the practices of which require special skill and knowledge. Regulation is also permitted where necessary to protect the public from conflicts of interest arising from employment in two occupations. *See Gardner v. N.C. State Bar*, 316 N.C. 285, 341 S.E. 2d 517 (1986) (State may constitutionally discipline an attorney employed by insurance company from representing the company's insureds in court); *Assoc. of Licensed Detectives v. Morgan, Attorney General*, 17 N.C. App. 701, 195 S.E. 2d 357 (1973) (State may prevent those who hold commissions as "special" police officers from obtaining license to be a private detective). Likewise, the State may exercise its police power to prevent a danger inherent in the operation of the business. In *State v. Warren*, 252 N.C. 690, 114 S.E. 2d 660 (1960), for example, the court held that the State may constitutionally license and regulate real estate brokers. In *Warren*, the court found it significant that real estate brokers stand in a position of trust in relation to their clients and that the business itself could "be conducted in such manner as to promote an undesirable state of local, economic excitement and unrest, which

may easily result in a degree of public distress analogous to that produced by mismanagement of a banking institution." *Id.* at 695, 114 S.E. 2d at 665. *See also D & W, Inc. v. Charlotte*, 268 N.C. 577, 151 S.E. 2d 241 (1966) (State may regulate sale of alcoholic beverages in restaurants); *State v. McCleary*, 65 N.C. App. 174, 308 S.E. 2d 883 (1983), *affirmed*, 311 N.C 397, 316 S.E. 2d 870 (1984) (State's police power extends to prohibition or regulation of gambling).

Without a showing of some danger to the public, however, our courts have refused to uphold the kind of substantial regulations found here. Regulations licensing such professions as dry cleaners, *State v. Harris, supra;* tile contractors, *Roller v. Allen, supra;* professional photographers, *State v. Ballance*, 229 N.C. 764, 51 S.E. 2d 731 (1949); and those who duplicate lenses for eyeglasses, *Palmer v. Smith*, 229 N.C. 612, 51 S.E. 2d 8 (1948), have been held unconstitutional. Other regulations of business have also been held invalid as unreasonable exercises of the police power. In *Indemnity Co. v. Ingram, Comr. of Insurance*, 290 N.C. 457, 226 S.E. 2d 498 (1976), the court held that the State may not require insurance companies to provide certain kinds of policies even if the State allowed for a reasonable profit and despite the fact that the insurance business affects the public health, an area where the police power is inherently favored. Similarly, in *In re Hospital, supra*, the court held the State could not require private hospitals to obtain a "certificate of need" before opening a medical facility, stating that every regulation of hospitals is not within the police power merely because hospitals are related to public health. (Decided under former G.S. 90-289 to 291, now G.S. 131E-175 to 191.) *See also Real Estate Licensing Board v. Aikens*, 31 N.C. App. 8, 228 S.E. 2d 493 (1976) (no reasonable basis for including persons who sell lists of property for rent in definition of real estate broker).

The State does not contend that the business of buying and selling military surplus property presents a danger to the public health, safety, or welfare. Nor does the State dispute that the statute represents a substantial obstacle to freely engage in that business. Instead, the State claims that the statute is necessary to prevent stores such as plaintiff's from serving as "fences" for stolen military property. Indeed, many of the statute's regulatory requirements are directly aimed at allowing law enforcement of-

ficials to trace the sources of the acquired property. If the State's primary purpose in this regulatory statute is to prevent the owners of military property sales businesses from illegally purchasing property they believe may be stolen, the statute cannot stand. The State may not undertake "by regulation to rid ordinary occupations and callings of the dishonest. . . . Resort in that area must be had to the criminal laws." *State v. Warren*, 252 N.C. at 693, 114 S.E. 2d at 664. *See also State v. Ballance, supra.* Likewise, if the State, by this regulatory statute, is seeking to enlist plaintiff's aid in enforcing already existing criminal laws, either by allowing the State to trace the property to its criminal source, or to deter its disposition, and, therefore, its theft, it is also unconstitutional. Those who buy and sell military surplus property may not be required to incur additional expense, or abandon that part of their business, to assist in enforcing our criminal laws. By reason of the "law of the land" clause of Article I, section 19, "the simple statement 'I don't want to' is still a sufficient answer to some governmental demands of this State." *Indemnity Co. v. Ingram, Comr. of Insurance*, 290 N.C. at 469-470, 226 S.E. 2d at 506.

The State fails to articulate a reasonable basis for the statute, but relies heavily on the presumption of validity accorded legislative acts. *See A-S-P Associates v. City of Raleigh, supra.* Whether a particular legislative act is reasonable, however, is a question for the court. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E. 2d 868 (1983). Although our courts will give a certain deference to the Legislature, any burden on the party challenging the statute is satisfied when the facts are "laid bare to the Court and the situation is found to be wanting in those conditions and those circumstances upon which alone the power of the Legislature in its exercise of the police power must depend." *State v. Harris*, 216 N.C. at 764, 6 S.E. 2d at 866. By challenging the statute and arguing its unconstitutionality, plaintiff has satisfied any burden it may have had. *See Treants Enterprises, Inc. v. Onslow County, supra.*

Whether a particular regulation is a valid exercise of the police power is a question of degree and reasonableness, measured in relation to the public good likely to result from it. *In re Hospital, supra.* While a plausible argument can be made that any regulation provides some benefit to the public, our courts have re-

quired more: that the regulation have, in fact, "a reasonable and substantial relation to the evil it purports to remedy." *Id.* at 551, 193 S.E. 2d at 735 (quoting *State v. Harris, supra,* at 759, 6 S.E. 2d at 863). The statute challenged here creates substantial obstacles to the free carrying on of plaintiff's chosen business, while its benefit to the public is disproportionately minimal. Consequently, we hold that Article 1 of Chapter 127B of the General Statutes is an unreasonable means of achieving its purported end, violates Article I, section 19 of the Constitution of North Carolina, and was properly declared unconstitutional.

We need not discuss plaintiff's other arguments. We note, however, that G.S. 127B-2 defines "military property" as: "property originally manufactured for the United States or State of North Carolina which is a type and kind issued for use in, or furnished and intended for, the military service of the United States or the militia of the State of North Carolina." This definition would seem to include weapons and other dangerous instrumentalities, regulation of which is found elsewhere, *see* G.S. 14-381 to 415; 18 U.S.C. sections 921-928 (1982 & Supp. III 1985).

Affirmed.

Judge ORR concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

I respectfully dissent from the majority opinion. The majority fails to find a "distinguishing feature" in plaintiff's business, "the material and probable consequence of which, if unregulated, is to produce substantial injury to the public peace, health, or welfare." *State v. Harris,* 216 N.C. 756, 758-59, 6 S.E. 2d 854, 863 (1940). I do find such a distinguishing feature.

The statutes under consideration attempt to regulate the sale of military property originally manufactured for "military service of the United States or the militia of the State of North Carolina." G.S. 127B-3. I see a legitimate purpose for the State to exercise its police power by regulating any sales of military equipment, particularly sales of tools of destruction such as weapons and paraphernalia used in conjunction with the use of

weapons. The State has sought to protect the general welfare of the citizens of this State and it is my opinion that the statutes in question constitutionally serve that purpose. Moreover, the probable consequence of allowing military property sales facilities to go unregulated is that stolen military property is likely to be bought and sold at said facilities. The statutorily required maintenance of a log of persons selling or buying property intended for military service may disclose the identities of persons or organizations illegally operating as paramilitary organizations or dealing in stolen goods.

G.S. chap. 127B, Art. 1 tracks the language of G.S. chap. 91. G.S. chap. 91 regulates pawnbrokers. Although G.S. chap. 91 has been in effect since 1983 it has not been declared as unconstitutional. The record keeping and licensing requirements of G.S. chap. 91 and G.S. chap. 127B, Art. 1 are similar. In my opinion the purposes for the State's exercise of police power, by enactment of G.S. 91-4 and G.S. 127B-4, are basically the same.

I find as persuasive the following reasoning relied upon by the State:

The business of pawnbrokers, because of the facility that it furnishes for the commission of crime and for its concealment, is one which clearly comes within the control of the police power of the state and is properly subject to regulation for the benefit of the public and for the prevention of frauds upon it, and it is unlawful if not conducted under the provisions, restrictions, and requirements of the law. The business is a privilege, not a right, and he who avails himself of it and derives its benefits must bear its burdens and conform to the laws in force regulating the occupation, if it is not illegal. Police regulation of the business of pawnbroking is peculiarly needed because thieves frequently attempt to dispose of stolen goods at places where such business is carried on, and the keepers not infrequently become 'fences' for such goods. Under the police power, it is properly within the province of a state, or of a municipality by authority of the state, to designate on what terms and conditions it will permit a pawnbroker to carry on his business, and a very clear abuse of this power must be shown to justify the court in declaring the regulations to be unreasonable and void.

54 Am. Jur. 2d Moneylenders and Pawnbrokers sec. 3 (footnotes omitted).

Faced with the extent of illegal activity of a paramilitary nature in this State and the theft of military property from the military bases in this State, I conclude that the legitimate exercise of the State's police power, by enactment of G.S. 127B, bears a rational and substantial relation to the public order, safety, and general welfare. *See In Re Certificate of Need for Aston Park Hospital, Inc.*, 282 N.C. 542, 193 S.E. 2d 729 (1973). In light of the public's interest I do not find the provisions of Article I of G.S. 127B to be unduly burdensome. Therefore, I would hold that Article 1 of Chapter 127B of the General Statutes does not violate Article I, section 19 of the North Carolina Constitution.

Finally, I am not convinced of the appropriateness of the summary fashion in which the trial court permanently enjoined the enforcement of an entire statutory scheme enacted by the General Assembly without articulating what, if any, basis it had for declaring as unconstitutional any of the various sections of Article I of G.S. chap. 127B. There is nothing in the trial court's order which addresses the propriety of severing those sections, if any, which the trial court deemed to be unconstitutional. The trial court's decision does not, in any way, evidence that "[t]here is a presumption that a particular exercise of the police power is valid and constitutional." *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 226, 258 S.E. 2d 444, 456 (1979). In my opinion it is entirely appropriate for the State to rely upon the presumption of the constitutionality of the statute in question. Moreover, plaintiff has failed to rebut that presumption. Accordingly, for reasons stated hereinabove, I respectfully dissent.