By its decision in this case, the majority of this Full Commission panel eviscerates what the General Assembly did in enacting the Workers Compensation Reform Act of 1994. I disagree with their interpretation and their evisceration and therefore dissent.
Following the plaintiff's injury by accident on October 25, 1994, the defendants began paying temporary total disability benefits to the plaintiff at the rate of $160.01 per week. On May 9, 1995, the defendants prepared and submitted to the Commission a Form 24 application to stop payment of compensation to the plaintiff. Simultaneously, the defendants also prepared and submitted a Form 60 admission of employee's right to compensation. At the time of his injury, Mr. Sims had been working for defendant employer Charmes/Arby's for only a brief period of time as an assistant manager trainee.
In this case the defendants' began paying temporary totaldisability benefits to the plaintiff following his injury without entering into a compensation agreement or otherwise admitting liability for the compensation they were paying. Months later, when the defendants sought to terminate the plaintiff's benefits based upon his concurrent self-employment, the defendants prepared and submitted a Form 60 admission of employee's right to compensation. In other words, the defendants paid disability
compensation, and thereafter — with complete knowledge of all relevant facts — admitted that they owed it.
This matter was originally heard before Deputy Commissioner Theresa B. Stephenson on September 10, 1996 in Winston-Salem. In an Opinion and Award entered on May 8, 1997, Deputy Commissioner Stephenson concluded that because the defendants accepted liability by way of a Form 60 admission instead of a Form 21 agreement, the plaintiff had not met his initial burden of proving his disability and was not entitled to a presumption of continuingdisability. After hearing the facts, the Deputy Commissioner did
find that plaintiff suffered a compensable injury to his back when he lifted a 50 pound box of meat and that plaintiff reported his injury and received treatment from Kernersville Immediate Care where he was diagnosed with lumbosacral strain.
The issue before the Commission on reconsideration of the majority's 18 December 1997 Opinion and Award is whether an employer's acknowledgment of liability through the "direct pay" mechanism added by the Workers' Compensation Reform Act of 1994
gives rise to the same presumption of disability recognized when an employer admits liability through a Form 21. The majority's original conclusion and defendants' contention that it does not give rise to a presumption divorces the presumption from its analytical underpinnings and disregards the intent of the amended statute to equate "direct pay" and Form 21 agreements.
The presumption at issue is not a "Form 21 presumption"; it is not conditioned on the existence of an agreement. Instead, the rule — established more than 25 years ago — is: "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work. . . ." Watkins v. Central Motor Lines, Inc.,279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971) (emphasis added). As the Court of Appeals explained in Kisiah v. W.R. Kisiah Plumbing,Inc., 124 N.C. App. 72, 82, 476 S.E.2d 434 (1996), "the presumption of disability inures to the benefit of an employee whenever a disability award is made by the Commission." See also Hoyle v. Carolina Associated Mills, 122 N.C. App. 462,464, 470 S.E.2d 357, 358 (1996) ("Under the Watkins presumption, if the Commission makes an award payable during disability, it is presumed that the disability continues until the employee returns to work. . . .").
The focus thus is on whether there has been an "award" or other determination of disability. A Form 21 agreement gives rise to the presumption because it is an award — not because of any particular characteristics of the agreement:
 A Form 21 agreement has long been regarded by this Court as "constitut[ing] an award by the Commission, enforceable if necessary, by a court decree." . . . Such an award is "conclusive and binding as to all questions of fact." N.C. Gen. Stat. § 97-86 (1991).
Kisiah, 124 N.C. App. at 81, 476 S.E.2d at 439. See also Watkins,279 N.C. at 138, 181 S.E.2d at 593 (Form 21 constitutes an award enforceable by a court decree and, therefore, gives rise to the presumption). The Court of Appeals has also found significant the fact that a Form 21 agreement constitutes an admission of liability by the defendant. Dalton v. Anvil Knitwear,119 N.C. App. 275, 458 S.E.2d 251, 257 (1995); Radica v. Carolina Mills,113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). Nothing in these cases suggests that an "agreement" is required as opposed to an award or an admission of liability.
"Direct payment" or payment based on a Form 60 cannot be distinguished from a Form 21 agreement. First, it constitutes an award enforceable in court, as the Court of Appeals confirmed on June 16, 1998:
 The plaintiff argues that the defendants' execution of a Form 60 constitutes an award of the Commission and thus entitles him to seek the imposition of a judgment, which in turn entitles him to seek execution for past due installments and future installments as they become due. We agree.
 ************* A Form 60 properly executed by the employer or someone acting on his behalf is an "award" within the meaning of section 97-87. This is so because any payment made "pursuant to G.S. 97-18(b)" constitutes an award of the Commission, N.C.G.S. § 97-82(b) (Supp. 1997), and payments voluntarily made by an employer pursuant to a Form 60 are payments made consistent with 97-18(b), see N.C.G.S. § 97-18(b) (Supp. 1997) (setting out procedures for payment where employer "admits the employee's right to compensation"). Indeed, the Form 60 specifically provides that it is entered "pursuant to N.C. Gen. Stat. § 97-18(b)."
Calhoun v. Wayne Dennis Heating Air Conditioning, No. COA97-1270, Slip op. at 4, 5-6 (N.C.App. June 16, 1998) (holding that a Form 60 obligation to pay could be converted into a judgment). In short, there can be no dispute based on Calhoun and the language of the statute that payment pursuant to a Form 60 constitutes an "award" that may be enforced in court.
Further, direct pay — like a Form 21 agreement — constitutes an admission of liability by the employer. The statutory provision authorizing "direct pay" states: "When the employer admits the employee's right to compensation, the first installment of compensation payable by the employer shall become due on the fourteenth day after the employer has written or actual notice of the injury or death." N.C. Gen. Stat. § 97-18(b) (emphasis added). If the employer does not wish to admit liability, then it must either notify the Commission that it is refusing to pay compensation, § 97-18(c), or it "may initiate compensation payments without prejudice and without admitting liability," § 97-18(d). In order to do the latter, the employer must submit a form stating that payments are being made without prejudice. § 97-18(d). If, however, "the employer or insurer does not contest the compensability of the claim or its liability therefor within 90 days from the date it first has written or actual notice of the injury or death, or within such additional period as may be granted by the Commission, it waives the right to contest the compensability of and its liability for the claim under this Article." Id___:. (emphasis added). Consistent with these provisions, the Form 60 is titled "Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b)" and notifies the employee that "[y]our employer admits your right to compensation". . . .
As a result, the sole factors necessary to give rise to the presumption are present in the Form 60 or "direct pay" context just as with a Form 21: an award enforceable in court and an admission by the employer/insurer of liability. Under the North Carolina appellate decisions, since there has been an "award . . . made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work at wages equal to those he was receiving at the time his injury occurred." Watkins, 279 N.C. at 137,181 S.E.2d at 592.
The plaintiff's bar contends that the Form 60 admission gives rise to the presumption of continuing disability because it establishes every element-including disability — of the employee's entitlement to compensation. The defense bar argues that while the Form 60 admission establishes the compensability of the claim and the liability of the employer, it does not address the issue of disability. Since the plaintiff has not met his initial burden of proving disability, the argument goes, there can be no presumption that the disability continues.
The question is, then, what does the employer admit pursuant to a Form 60. Specifically, does the employer admit the employee's disability? A careful analysis of the provisions of the Workers' Compensation Reform Act concerning direct payment of benefits clearly establishes that the employer admits the employee's disability when directly paying benefits pursuant to a Form 60.
The plain language of G.S. § 97-18(b) compels the conclusion that an employer utilizing the direct pay procedure admits that the employee is disabled. G.S. § 97-18(b), as amended, sets forth the procedure for payment of disability benefits "when the employer admits the employee's right to compensation. ."
In Hollman v. City of Raleigh, 273 N.C. 240, 159 S.E.2d 874
(1968), the North Carolina Supreme Court set forth the four conditions antecedent to the right to compensation under the North Carolina Workers' Compensation Act. The claimant must show: (1) That he suffered an injury by accident; (2) That such injury arose in the course of the employment; (3) That such injury arose out of the employment; and (4) That such injury caused him disability. Logically, one cannot be entitled to disability benefits unless one is disabled.
The conclusion that an employer who admits the employee's right to compensation under G.S. § 97-18(b) also admits that the employee is disabled is bolstered by consideration of the corresponding changes to G.S. § 97-82(b), which now specifically provides that direct payment of compensation constitutes "payment of compensation pursuant to an award." While G.S. § 97-82(b) also provides that direct payment "pursuant to G.S. § 97-18(b) shall constitute an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment is made," the words "compensability" and "liability" are properly construed here to include disability. This is so because G.S. § 97-82(b) must be interpreted together with G.S. § 97-18(b), to which it refers. When the statutes are so construed, the word "compensability" is clearly used in its broadest sense, to include disability, and the word "liability" can only mean liability for compensation.
If direct payment of benefits does not establish the fact of the employee's disability, the anomalous result is that an employee who has been awarded compensation for disability has not yet met his initial burden of proving that he is disabled. This result is even more absurd in light of Calhoun's holding that a Form 60 admission can be reduced to judgment and enforced in the Superior Court like any other award of compensation under the Act.
A number of other logical anomalies flow from the conclusion that the Form 60 admission does not establish the employee's disability. First, although the employer must file a Form 24 application prior to terminating the payment of compensation pursuant to the Form 60 admission, presumably, the employee would bear the burden of proving his disability in the telephonic hearing. Second, this interpretation of the direct payment system eliminates the need for the new payment without prejudice provisions of G.S. § 97-18(d). It is difficult to understand why an employer would want to utilize the payment without prejudice procedure at all, if under the direct payment system the employer could change its mind about payment of benefits at any time and force the employee to prove his claim. This is the ultimate payment without prejudice.
Finally, if the Form 60 admission does not establish the employee's disability, then a procedure which was intended to lessen the administrative burden on the parties and the Commission would be transformed into a bureaucratic nightmare. Presumably, in every Form 60 case, the employee would be required to request a hearing in order to establish the fact of his disability and preserve his rights under the Act. Thus the interpretation of the majority eviscerates the Workers Compensation Reform Act of1994.
Finally, the affidavits proffered to show legislative intent should not be part of the record in this case. Including them, without counter affidavits, gives some credence to them, while our Supreme Court has said time and time again that the legislative words speak for themselves and not even a legislator will be permitted to testify as to what the legislature intended when it enacted the words. The words mean what they say. DW, Inc. v.City of Charlotte, 268 N.C. 577, 581, 151 S.E.2d 241,244 (1966).
This 1st day of October 1998.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER